DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR, recurrido, *v.* ALTURAS DE FLORIDA DEVELOPMENT CORP. y/o LUIS ACOSTA CONSTRUCTION CORP., querellados y recurridos, y LUIS ACOSTA LESPIER, peticionario.

*Número:* CE-87-220          *Resuelto:* 9 de marzo de 1993

908

*Rafael R. Vizcarrondo* y *Julio M. Rodríguez*, abogados del peticionario; *Iván E. Ortiz Monroig*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Mediante petición de *certiorari* acude ante nos Luis Acosta Lespier y solicita la revocación de una resolución del Tribunal Superior, Sala de Arecibo, que le responsabilizó en su carácter personal por el incumplimiento de una orden del Departamento de Asuntos del Consumidor expedida contra la corporación de la cual era el presidente y único accionista antes de que la corporación fuese absorbida en una fusión corporativa. Revocamos y devolvemos los autos para procedimientos ulteriores en conformidad con esta opinión.

## I

El 20 de julio de 1983 la Sra. Leida Troche presentó una querella ante el Departamento de Asuntos del Consumidor (en adelante D.A.Co.) contra la corporación Alturas de Florida Development Corp. Para marzo de 1980, la corporación querellada había vendido a la señora Troche una unidad de vivienda en la Urbanización Alturas de Florida. La querellante alegó que tal unidad adolecía de varios defectos de construcción. El 31 de agosto de 1983 enmendó la querella para incluir como querellada a la constructora de

la urbanización, la corporación Luis Acosta Construction Corp.

El 25 de enero de 1984 se celebró una vista administrativa ante D.A.Co. Todas las partes fueron debidamente notificadas. Comparecieron la querellante y la corporación querellada Luis Acosta Construction Corp., representada por su mensajero Ismael Prieto. Según indicó D.A.Co. en su resolución, la comparecencia del señor Prieto en la vista fue una comparecencia "pro-forma". La corporación querellada Alturas de Florida Development Corp. no compareció ni excusó su incomparecencia. En la vista se determinó que la residencia de la señora Troche adolecía de graves defectos de construcción tales como grietas, filtraciones de agua en las paredes y hundimiento del techo, las columnas y los pisos.

Mediante Resolución y Orden de 6 de abril de 1984, D.A.Co. ordenó a las corporaciones querelladas a corregir solidariamente los defectos de construcción en un término de once (11) días a partir de la fecha de notificación de la resolución y orden. Dispuso, además, que de no cumplir con tal orden las corporaciones querelladas quedarían obligadas solidariamente a indemnizar a la señora Troche la suma de cinco mil cien dólares ($5,100) dentro de los cinco (5) días a partir del último día del primer término concedido. Las corporaciones querelladas podían optar por cumplir con cualquiera de las dos (2) alternativas aun después de la expiración del primer término.

A pesar de que fueron notificadas de su derecho a solicitar reconsideración de la resolución y orden, las corporaciones querelladas optaron por no ejercer este derecho. Por otro lado, tampoco cumplieron con lo dispuesto en la orden.

Aproximadamente cuatro (4) meses después, el 1ro de agosto de 1984, la corporación querellada Luis Acosta Construction Corp. suscribió un acuerdo de fusión con las corporaciones Lacco Developoment Corp. y Laguna Estates Corporation. A raíz de tal acuerdo, Laguna Estates Corpo-

ration absorbió a las otras dos (2) corporaciones. Una vez efectuada esta fusión, se enmendó el certificado de incorporación de la corporación resultante para cambiar su nombre a Constructora Laguna, Inc. Los dueños de todas las acciones de dicha corporación resultaron ser el Sr. Luis Acosta Lespier y el Sr. Eduardo J. Chevres. El señor Acosta Lespier era el presidente, agente residente y único accionista de la corporación querellada Luis Acosta Construction Corp.

Acto seguido, el 21 de septiembre de 1984, los señores Acosta Lespier y Chevres vendieron todas sus acciones en la corporación Constructora Laguna, Inc. a Antonio Cáceres Troncoso, quien en ese momento era residente de la República Dominicana. El precio total de venta de las acciones fue de once mil doscientos treinta dólares ($11,230), computado a base de diez dólares ($10) por acción.

D.A.Co. no recibió notificación alguna de estas transacciones corporativas. El 30 de octubre de 1984 el entonces Secretario de D.A.Co., Rurico Díaz Aponte, presentó una petición ante el Tribunal Superior, Sala de Arecibo, en la que solicitó que se ordenara el cumplimiento con la resolución y orden de la agencia. Nombró como partes en la petición a las corporaciones querelladas Luis Acosta Construction Corp. y Alturas de Florida Development Corp. Mediante Orden de 2 de noviembre de 1984, el Tribunal Superior accedió a la solicitud de D.A.Co. y ordenó a dichas corporaciones a cumplir so pena de desacato civil.

Ante el incumplimiento de esta orden y a solicitud de D.A.Co., el Tribunal Superior expidió una orden para que las corporaciones querelladas comparecieran a mostrar causa por la cual no se les debía condenar por desacato. D.A.Co., sin embargo, tuvo que solicitar la suspensión de la vista señalada por falta de emplazamiento. En dos (2) ocasiones posteriores adicionales, D.A.Co. presentó una moción de desacato y el Tribunal Superior expidió una orden

para mostrar causa, pero D.A.Co. se vio obligado a solicitar la suspensión de la vista señalada por la misma razón.

No es hasta el 6 de noviembre de 1985 que D.A.Co. entrega una orden para mostrar causa al señor Acosta Lespier en su carácter de presidente de Luis Acosta Construction Corp. y así le notifica de una vista señalada para el 25 del mismo mes. El día de la vista, dicha corporación presentó una moción de desestimación en la que sostuvo, en síntesis, que la orden de D.A.Co. debía dejarse sin efecto porque no estuvo representada por abogado en la vista administrativa.[1] Mediante Resolución de 8 de abril de 1986, el Tribunal Superior declaró sin lugar la moción de desestimación y ordenó nuevamente a la corporación querellada a cumplir con la resolución y orden de D.A.Co. so pena de desacato civil. La corporación volvió a incumplir.

Presentada una nueva moción de desacato, el tribunal expidió nueva orden para mostrar causa, y el 14 de agosto de 1986 se emplazó mediante la misma al señor Acosta Lespier en su carácter personal. Al día siguiente, el Lcdo. David Carrión Fuentes, quien suscribió la moción de desestimación, presentó una moción informativa en la que dio a conocer la fusión corporativa y la venta de acciones. Ante esta información, D.A.Co. no solicitó la sustitución o la acumulación como parte de la corporación resultante Constructora Laguna, Inc.

El 8 de septiembre de 1986 se celebró la vista sobre la moción de desacato. Comparecieron el señor Acosta Lespier, representado por su abogado, y el licenciado Carrión Fuentes, en representación del señor Cáceres. Luego de escuchar el testimonio del señor Acosta Lespier sobre la fusión corporativa y la venta de las acciones, el Tribunal

---

[1] De los autos no se desprende que la corporación querellada Alturas de Florida Development Corp. haya comparecido a esta vista ante el tribunal a quo.

Superior lo encontró incurso en desacató.(²) En moción de reconsideración, oportunamente presentada, el señor Acosta Lespier sostuvo que no se le podía responsabilizar en su carácter personal porque él no había sido parte en el procedimiento ante D.A.Co. Planteó, además, que en todo caso la responsabilidad debía recaer sobre Constructora Laguna, Inc., sucesora de la corporación querellada Luis Acosta Construction Corp.

Por su parte, D.A.Co. sostuvo que el señor Acosta Lespier debía ser personalmente responsable porque no existía separación entre su persona y las personas jurídicas de las corporaciones Luis Acosta Construction Corp. y Constructora Laguna, Inc. En apoyo de esta posición, D.A.Co. planteó que el señor Acosta Lespier, como presidente y portador de todas las acciones, era el único encargado de la primera corporación y uno de los dos (2) accionistas inciales de la segunda antes de la venta de las acciones al señor Cáceres Troncoso. No presentó prueba sobre la naturaleza o el funcionamiento de ninguna de las dos (2) corporaciones ni sobre la fusión corporativa o la venta de las acciones de la corporación resultante.

Mediante Resolución de 2 de marzo de 1987, el Tribunal Superior resolvió que, no empece el acuerdo de fusión suscrito, la Ley General de Corporaciones de Puerto Rico permitía que la acción continuase contra la corporación querellada Luis Acosta Construction Corp. Resolvió, además, que "dadas las circunstancias particulares de este caso", procedía descorrer el velo corporativo y responsabilizar al señor Acosta Lespier en su carácter personal. En particular, señaló que al vender las acciones de la corporación resultante, Constructora Laguna, Inc., el señor Acosta Lespier manifestó que no había carga o gravamen sobre las

---

(²) El señor Acosta Lespier declaró que fue por su voluntad que la corporación querellada Luis Acosta Construction Corp. careció de representación adecuada en la vista administrativa.

mismas, a sabiendas de que la corporación constituyente, Luis Acosta Construction Corp., estaba sujeta a la orden de D.A.Co. El Tribunal Superior procedió a dejar sin efecto su dictamen de 8 de septiembre de 1986 y ordenó al señor Acosta Lespier depositar, so pena de desacato civil, la suma adeudada en la Secretaría del tribunal dentro de los tres (3) días de la notificación de la resolución. El señor Acosta Lespier consignó el dinero en la Secretaría y solicitó que no fuera desembolsado hasta tanto se resolviera el recurso que presentaría ante el Tribunal Supremo.

El 30 de marzo de 1987 el señor Acosta Lespier acudió ante nos mediante petición de *certiorari*. Adujo, en síntesis, que el tribunal de instancia erró al descorrer el velo corporativo sin prueba y al imponerle responsabilidad en su carácter personal a pesar de que él no fue parte en el procedimiento administrativo. Expedimos el auto luego de una segunda moción de reconsideración. Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II

■ Como regla general, una "fusión corporativa" es una combinación de dos (2) o más corporaciones mediante la cual una de las corporaciones absorbe y sobrevive a las demás. 15 *Fletcher Cyc. Corp.* Secs. 7041 y 7082, págs. 8-10 y 124-125 (Perm. ed. 1982). Las corporaciones que participan en la fusión se conocen como corporaciones constituyentes, y la corporación que absorbe a las demás se conoce como la resultante.

La primera interrogante que presenta este caso es si una corporación constituyente que ha sido absorbida en una fusión efectuada después de que una orden administrativa en su contra adviniera final y firme continúa con vida jurídica para fines del procedimiento judicial para ejecutar tal orden. Resolvemos que el procedimiento judicial

de ejecución puede seguir contra dicha corporación no empece la fusión ocurrida.

A. **[2]** Al resolver interrogantes sobre la existencia de corporaciones privadas es menester recordar que las corporaciones privadas son personas jurídicas que existen por virtud de ley. Art. 27 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 101. Es la ley, por lo tanto, la que establece los fines para los cuales las corporaciones privadas existen y la capacidad civil de la que disfrutan durante su existencia. Arts. 28 y 29 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 102 y 103.

En Puerto Rico, la ley especial que rige las corporaciones privadas es la Ley General de Corporaciones, Ley Núm. 3 de 9 de enero de 1956, según enmendada, 14 L.P.R.A. sec. 1101 *et seq.* Con escasas excepciones, esta ley se fundamenta en la Ley General de Corporaciones del estado de Delaware, según revisada por la Comisión Codificadora, que entró en vigor el 12 de febrero de 1953 y que se codificó en el Título 8, Capítulo 1, del Código de Delaware. A.A. Berle, *Objetivos y significación de la nueva Ley de Corporaciones*, 16 Rev. C. Abo. P.R. 27, 27–28 (1956).

■ En particular, los artículos de la Ley General de Corporaciones que autorizan y rigen la fusión corporativa fueron copiados de la Ley General de Corporaciones del estado de Delaware y no han sido enmendados desde su aprobación inicial en 1956. 14 L.P.R.A. secs. 1901 a 1906; 8 Del. C. 1953, secs. 251, 252, 259, 260, 261 y 262. Véase A.A. Berle, *Concordance. Memorandum Accompanying Project of the Corporation Law of the Commonwealth of Puerto Rico* (En la Biblioteca del Tribunal Supremo de Puerto Rico). Es una doctrina consumada que las interpretaciones que los tribunales del estado de Delaware y de otras jurisdicciones hayan dado a las secciones correspondientes de la Ley General de Corporaciones del estado de Delaware tendrán valor ilustrativo y persuasivo en esta

jurisdicción. *Peña Clos v. Cartagena Ortiz*, 114 D.P.R. 576, 588 (1983); *Hernández Agosto v. López Nieves*, 114 D.P.R. 601, 607 (1983); *Pueblo v. Zavala*, 78 D.P.R. 484, 488 (1955); *Corretjer v. Tribl. de Distrito*, 72 D.P.R. 754, 760 (1951).

B. ▮▮▮ Según el Art. 903 de la Ley General de Corporaciones, 14 L.P.R.A. sec. 1903, una vez se cumple con los requisitos para efectuar una fusión corporativa queda extinguida, para todos los efectos de las leyes del Estado Libre Asociado, "la personalidad jurídica aislada de todas las corporaciones constituyentes que fueren partes en el convenio, salvo la de la que hubiere absorbido por fusión a la otra u otras, según el caso". Por virtud del mismo artículo, la fusión conlleva el traspaso a la corporación resultante de todos los bienes, derechos, privilegios, facultades, franquicias y todo otro interés de las demás corporaciones constituyentes. Íd. De igual forma, todas las deudas, las obligaciones y los deberes de las corporaciones constituyentes pasan a ser deudas, obligaciones y deberes de la corporación resultante y le son exigibles como si hubieran sido contraídos originalmente por ésta. Íd.

A manera de excepción, sin embargo, la Ley General de Corporaciones considera una circunstancia en la cual la fusión corporativa no conlleva la extinción inmediata de la personalidad jurídica aislada de las corporaciones constituyentes absorbidas. Sobre el efecto de una fusión o consolidación sobre una acción o procedimiento pendiente, el Art. 905 dispone:

> Toda acción o procedimiento pendiente, radicado por cualquiera de las corporaciones consolidadas o fusionadas, o entablado contra cualquiera de ellas, *podrá continuarse como si no se hubiere efectuado la consolidación o fusión*; o podrá sustituirse a la corporación que subsistiere o se originare de la fusión o consolidación en lugar de aquella que era parte en la acción o procedimiento. (Énfasis suplido.) 14 L.P.R.A. sec. 1905.

■ Como consecuencia de este artículo, la fusión corporativa no extingue, de por sí, la personalidad jurídica aislada de aquella corporación constituyente a ser absorbida en una fusión que al momento de efectuarse la misma es parte en una acción o procedimiento. *Fletcher*, supra, Secs. 7110–7111, págs. 196–197. De no sustituirse la corporación resultante, la personalidad jurídica de la corporación constituyente persiste exclusivamente para fines de la acción o el procedimiento pendiente.

La mayoría de las leyes de corporaciones de los estados de Estados Unidos de América contienen una disposición similar. *Fletcher*, supra, Sec. 7111, pág. 197. Véase *Model Business Corporation Act Annotated*, 3ra ed., Prentice Hall Law & Business, 1991, Vol. 3, Sec. 11.06. El Art. 905 de nuestra ley, *supra*, corresponde a la sec. 261 de la Ley General de Corporaciones del estado de Delaware. 8 Del. C. 1953, sec. 261. La adopción general de esta clase de disposición respondió a una doctrina del *common law* que sostenía que la extinción de la vida jurídica de una corporación, ya fuera por fusión, consolidación o disolución, terminaba todo litigio pendiente por o contra la corporación. 2 *Folk on the Delaware General Corporation Law: A Commentary and Analysis* Sec. 261; 3B *Moore's Federal Practice* Sec. 25.10, págs. 25-78 a 25-80 (1992). En *Oklahoma Gas Co. v. Oklahoma*, 273 U.S. 257, 259 (1927), el Tribunal Supremo federal, por voz del Juez Presidente Taft, expresó:

It is well settled that at common law and in the federal jurisdiction a corporation which has been dissolved is as if it did not exist, and the result of the dissolution can not be distinguished from the death of a natural person in its effect. [Citas omitidas.] It follows, therefore that, as the death of the natural person abates all pending litigation to which such a person is a party, dissolution of a corporation at common law, abates all litigation in which the corporation is appearing either as plaintiff or defendant. Véanse, además: *Title Co. v. Wilcox Bldg. Corp.*, 302 U.S. 120, 125 (1937); *Defense Corp. v. Lawrence Co.*, 336 U.S. 631, 634 (1949).

Como consecuencia de esta doctrina, una corporación podía evadir responsabilidad civil o penal por medio de una fusión, consolidación o disolución. *Kreindler v. Marx*, 85 F.R.D. 612, 617 (1979); *United States v. Maryland & Virginia Milk Producers*, 145 F. Supp. 374, 375 (Cir. D.C. 1956); *United States v. Line Material Co.*, 202 F.2d 929, 931 (6to Cir. 1953). La extinción de la vida jurídica de la corporación no sólo impedía el inicio de cualquier acción en su contra, sino que, además, producía el cese inmediato de toda acción pendiente al momento de la extinción. Las inequidades resultantes eran obvias. Los tribunales, a su vez, no podían extender la vida jurídica de las corporaciones sin autoridad expresa en ley. Nuevamente citamos al Juez Presidente Taft:

> To allow actions to continue would be to continue the existence of the corporation *pro hac vice*. But corporations exist for specific purposes, and only by legislative act, so that if the life of the corporation is to continue even only for litigating purposes it is necessary that there should be some *statutory authority for the prolongation*. The matter is really not procedural or controlled by the rules of the court in which the litigation pends. It concerns the fundamental law of the corporation enacted by the State which brought the corporation into being. (Énfasis suplido y en el original.) *Oklahoma Gas Co. v. Oklahoma*, supra, pág. 259.

A manera de remedio, los estados comenzaron a aprobar leyes que extendían la vida jurídica de las corporaciones después de una fusión, consolidación o disolución para así impedir la evasión de responsabilidad. La Sec. 261 de la Ley General de Corporaciones del estado de Delaware, *supra*, y el citado Art. 905 de nuestra ley son parte de estos esfuerzos. Estatutos de este tipo "deben interpretarse de manera amplia y liberal. Obviamente, sería intolerable y contrario a la política pública permitir que una corporación evada su responsabilidad civil o escape de sanciones criminales porque voluntariamente termine su existencia". (Traducción nuestra.) *United States v. Ma-*

*ryland & Virginia Milk Producers*, supra, pág. 375. Véanse, además: *Kreindler v. Marx*, supra, pág. 617; *Abrams v. Occidental Petroleum Corp.*, 20 Fed. R. Serv.2d 170, 175 (1975).

En reconocimiento de este principio de política pública, el Art. 1204 de la Ley General de Corporaciones establece:

> La responsabilidad de las corporaciones creadas con arreglo a este subtítulo o al amparo de las leyes del Estado Libre Asociado, o la responsabilidad de los accionistas, directores u oficiales de tales corporaciones, o los derechos o remedios de los acreedores de éstas o de las personas que hagan negocios con la corporación, no sufrirán en modo alguno ninguna restricción o menoscabo por la venta de las corporaciones, o por el aumento o disminución de las acciones del capital de tales corporaciones, o *por la consolidación o fusión de dos (2) o más corporaciones*, o por cualquier cambio o enmienda que se introduzca en el certificado de incorporación. (Énfasis suplido.) 14 L.P.R.A. sec. 2204. Véase 8 Del. C. 1953, sec. 328.

La extensión limitada de la vida jurídica de corporaciones constituyentes que serán absorbidas en una fusión, para fines de una acción o procedimiento pendiente, es una de las formas de implantar esta política pública. 14 L.P.R.A. sec. 1905.

De igual manera, en el caso de la disolución corporativa, el Art. 1006 de nuestra ley, 14 L.P.R.A. sec. 2006, extiende, por un término de tres (3) años, la personalidad jurídica de la corporación disuelta para continuar con pleitos pendientes o para dar oportunidad al inicio de acciones o procedimientos por o contra dicha corporación. La diferencia principal entre el caso de la disolución y el de la fusión es que en este último la ley extiende la personalidad jurídica de la corporación constituyente que será absorbida únicamente para fines de acciones o procedimientos pendientes al momento de efectuarse la fusión. 14 L.P.R.A. sec. 1905. La ley no autoriza el comienzo de una acción o de un procedimiento contra una corporación constituyente absor-

bida en una fusión después de efectuada la misma. *Beals v. Washington Intern., Inc.*, 386 A.2d 1156, 1161–1162 (1978); *Damon Alarm Corp. v. American District Telegraph Co.*, 304 F. Supp. 83, 84 (1969); *Sevits v. Mckiernan-Terry Corporation*, 264 F. Supp. 810, 811 (1966) (los tres (3) casos interpretan la sec. 261 de la Ley General de Corporaciones del estado de Delaware, 8 Del. C. 1953, sec. 261). En ese caso procede dirigir la acción o el procedimiento contra la corporación resultante como sucesora de todas las obligaciones de las corporaciones constituyentes absorbidas. 14 L.P.R.A. sec. 1903.

Por lo tanto, si bien la regla general es que una fusión corporativa al amparo de la Ley General de Corporaciones extingue la personalidad jurídica aislada de las corporaciones constituyentes que serán absorbidas en la fusión, si alguna de dichas corporaciones es parte en una acción o procedimiento pendiente al momento de la fusión, su personalidad jurídica no se extingue automáticamente como resultado de la fusión. Su personalidad jurídica puede subsistir, pero únicamente para fines de la acción o el procedimiento pendiente.

C. ▮ Si bien el Art. 905 autoriza que todo procedimiento pendiente *continúe* contra la corporación constituyente absorbida en la fusión, la corporación resultante responderá por las sentencias o por las órdenes que en su día se dicten en contra de la corporación constituyente absorbida que era parte en una acción o en un procedimiento al momento de efectuarse la fusión. 14 L.P.R.A. sec. 1903; *Moore's*, supra, Sec. 25.08, pág. 25-63; *Wright and Miller, Federal Practice and Procedure: Civil 2d* Sec. 1958, pág. 555 (1986). Siendo la corporación resultante una verdadera parte en interés, el mismo Art. 905, *supra*, además de autorizar que continúe la vida jurídica de las corporaciones absorbidas que eran parte en acciones o procedimientos pendientes, dispone:

...[P]odrá sustituirse a la corporación que subsistiere o se originare de la fusión o consolidación en lugar de aquella que era parte en la acción o procedimiento. 14 L.P.R.A. sec. 1905.

Esta sustitución no es obligatoria. El citado Art. 905 provee dos (2) alternativas. La acción o el procedimiento pendiente puede continuar contra la corporación constituyente absorbida, en cuyo caso se extiende su personalidad jurídica para fines de la acción o el procedimiento, o contra la corporación resultante si solicita y el tribunal concede la sustitución de parte, en cuyo caso la personalidad jurídica de la corporación constituyente absorbida se extingue definitivamente.

En su aspecto procesal, la sustitución autorizada se rige por la Regla 22.3 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III), ya que, como regla general, una fusión corporativa al amparo de la Ley General de Corporaciones conlleva el traspaso de los derechos y las obligaciones de las corporaciones constituyentes absorbidas a la corporación resultante. 14 L.P.R.A. sec. 1903. Similar interpretación ha recibido la Regla 25(c) de Procedimiento Civil federal, de la cual se derivó la regla local. *Upgrade Corp. v. St. Regis Paper Co.*, 417 F. Supp. 21, 23 (1975); *DeVilliers v. Atlas Corporation*, 360 F.2d 292 (10mo Cir. 1966); *Moore's*, supra, Sec. 25.10[2], pág. 25-80; *Wright and Miller*, supra, págs. 553–561.

## III

El caso ante nos presenta unos hechos muy particulares. La fusión de la corporación querellada Luis Acosta Construction Corp. ocurrió después de que la orden de D.A.Co. en su contra adviniera final y firme, pero antes de que D.A.Co. acudiera ante el Tribunal Superior a solicitar la ejecución de la orden. Al no haber recibido notificación de la fusión, D.A.Co. dirigió su petición contra la cor-

poración querellada Luis Acosta Construction Corp. En ningún momento la corporación resultante, Constructora Laguna, Inc., solicitó su sustitución o acumulación como parte. D.A.Co. tampoco la solicitó. Resolvemos que el procedimiento ante el Tribunal Superior es parte integral del procedimiento comenzado ante D.A.Co., por lo que al momento de la fusión había un procedimiento pendiente en contra de una corporación constituyente que sería absorbida y que, en virtud del Art. 905 de la Ley General de Corporaciones, *supra*, la personalidad jurídica de esa corporación subsiste para fines del procedimiento. 14 L.P.R.A. sec. 1905.

El Art. 905 de la Ley General de Corporaciones aplica a "[t]oda acción o procedimiento pendiente", pero no especifica la naturaleza de las acciones o los procedimientos a los cuales aplica. 14 L.P.R.A. sec. 1905. Según el texto de 1953, la sec. 261 de la Ley General de Corporaciones del estado de Delaware adolecía de igual falta de especificidad. 8 Del. C. 1953, sec. 261 (*Any action and proceeding pending...*). Véanse: *United States v. Maryland & Virginia Milk Producers*, supra, pág. 375; *United States v. Line Material Co.*, supra, pág. 932. En respuesta a varias interpretaciones conflictivas de tribunales federales, esta sección sufrió una enmienda en 1967 para aclarar que su aplicación se extiende a toda clase de acción o procedimiento pendiente, sea de naturaleza civil, penal o administrativa. Folk, *op. cit.*

■ Si bien el Art. 905 de nuestra ley, *supra*, no ha sido enmendado así, tanto la política pública a la cual responde como la regla de hermenéutica de que estas disposiciones deben interpretarse de forma amplia y liberal exigen que su alcance sea el mismo que el de la sec. 261. *United States v. Maryland & Virginia Milk Producers*, supra, pág. 375; *Kreindler v. Marx*, supra, pág. 617; *Abrams v. Occidental Petroleum Corp.*, supra, pág. 175. Por lo tanto, concluimos

que el Art. 905 de la Ley General de Corporaciones, *supra*, aplica a cualquier acción o procedimiento civil, penal o administrativo pendiente al momento de la fusión.

■ El procedimiento en este caso es un procedimiento judicial para la ejecución de una orden administrativa. La Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, según enmendada, 3 L.P.R.A. sec. 341 *et seq.*, autoriza al Secretario de D.A.Co. a recurrir al Tribunal Superior "en solicitud [para] que se ponga en vigor cualquier orden de cesar y desistir por él emitida o cualquier orden correctiva", y dispone que "[e]l incumplimiento de una orden judicial declarando con lugar tal solicitud constituirá desacato al Tribunal". 3 L.P.R.A. sec. 341*l*(e). El procedimiento ante el Tribunal Superior es parte integral del trámite comenzado ante D.A.Co. ya que es el único recurso disponible de la agencia para poner en vigor sus órdenes correctivas. Entendemos, por lo tanto, que el trámite ante la agencia y el trámite ante el tribunal forman parte de un mismo procedimiento dirigido a ejecutar el mandato legislativo encomendado a D.A.Co.

En este caso, D.A.Co. expidió la resolución y orden el 6 de abril de 1984. Ninguna de las corporaciones querelladas solicitó la reconsideración ni la revisión judicial de dicha orden, por lo que la misma advino final y firme. La fusión corporativa ocurrió el 1ro de agosto del mismo año. Por consiguiente, al momento de la fusión existía un procedimiento pendiente contra la corporación querellada Luis Acosta Construction Corp. *En virtud del Art. 905 de la Ley General de Corporaciones, supra, la fusión no extinguió la personalidad jurídica aislada de dicha corporación. La corporación querellada Luis Acosta Construction Corp. subsistió únicamente para fines del procedimiento inciado ante D.A.Co. y luego ante el Tribunal Superior el 3 de octubre de 1984. Este procedimiento judicial de ejecución podía dirigirse contra dicha corporación no empece que fuera una*

*de las corporaciones constituyentes absorbidas en la fusión. Es decir, el procedimiento podía seguir "como si no se hubiere efectuado la ... fusión". 14 L.P.R.A. sec. 1905. Por lo tanto, y contrario a la posición del señor Acosta Lespier, la corporación querellada Luis Acosta Construction Corp. continúa con responsabilidad jurídica sobre los hechos que dieron lugar al caso de autos.*

## IV

La segunda interrogante que presenta este caso es si el tribunal de instancia erró al descorrer el velo corporativo e imponer responsabilidad personal al señor Acosta Lespier como presidente y único accionista de la corporación querellada Luis Acosta Construction Corp. por la obligación de esta última a raíz de la orden de D.A.Co.

Si bien concurrimos con el tribunal a quo de que no se puede permitir que se utilice la figura corporativa para evadir una obligación legítima, entendemos que hasta ahora D.A.Co. no ha presentado la prueba necesaria para descorrer el velo corporativo de Luis Acosta Construction Corp. e imponer responsabilidad personal al señor Acosta Lespier. En particular, resolvemos que el carácter del señor Acosta Lespier como presidente y único accionista de la corporación querellada y la fusión de esta corporación con otras entidades, por sí solos y sin prueba adicional, no son prueba suficiente para descorrer el velo corporativo en esta etapa de los procedimientos.

A. ▆▆ Sabido es que una corporación tiene su propia personalidad jurídica y su propio patrimonio, distintos a la personalidad y al patrimonio de sus accionistas, sean estos últimos personas naturales o jurídicas. 14 L.P.R.A. sec. 1106; *Sucn. Santaella v. Srio. de Hacienda*, 96 D.P.R. 442, 451 (1968); *Sucn. Pérez v. Gual*, 76 D.P.R. 959, 963 (1954); *Swiggett v. Swiggett, Inc.*, 55 D.P.R. 76, 83 (1939). En con-

secuencia, la responsabilidad de los accionistas por las deudas y obligaciones de la corporación está generalmente limitada al capital que éstos hayan aportado al patrimonio de la corporación. *Fletcher*, supra, Vol. 1, Sec. 14, págs. 463–465; *Fleming v. Toa Alta Develop. Corp.*, 96 D.P.R. 240, 244 (1968).

Sabido es, igualmente, que los tribunales descartarán la personalidad jurídica de una corporación y sujetarán el patrimonio de los accionistas para responder por las deudas y obligaciones de la corporación en aquellos casos en los cuales

> ... la corporación es meramente un "alter ego" o conducto o instrumento económico pasivo ("business conduit") de sus únicos accionistas, recibiendo éstos exclusiva y personalmente los beneficios producidos por la gestión corporativa [y] si ello es necesario para evitar un fraude o la realización de un propósito ilegal o para evitar una clara inequidad o mal ("wrong"). *Cruz v. Ramírez*, 75 D.P.R. 947, 954 (1954). Véanse, además: *Fleming v. Toa Alta Develop. Corp.*, supra, pág. 243; *San Miguel Fertil. Corp. v. P.R. Drydock*, 94 D.P.R. 424, 430 (1967); *J.E. Candal & Co. v. Rivera*, 86 D.P.R. 508, 513 (1962); *Sucn. Pérez v. Gual*, supra, págs. 963–964; *Swiggett v. Swiggett, Inc.*, supra, pág. 85.

De acuerdo con este principio, una corporación es el álter ego o conducto económico pasivo de sus accionistas cuando entre éstos y la corporación existe tal identidad de interés y propiedad que las personalidades de la corporación y de los accionistas, sean éstos personas naturales o jurídicas, se hallan confundidas, de manera que la corporación no es, en realidad, una persona jurídica independiente y separada. *Swiggett v. Swiggett, Inc.*, supra, pág. 85; *Sucn. Pérez v. Gual*, supra, págs. 963–964; *J.E. Candal & Co. v. Rivera*, supra, pág. 513; *San Miguel Fertil. Corp. v. P.R. Drydock*, supra, pág. 430; *Fletcher*, supra, Vol. 1, Sec. 41.10, págs. 614–617.

La aplicación de este principio dependerá de los hechos y las circunstancias específicas del caso particular a

la luz de la prueba presentada. Así lo establecimos en *Cruz v. Ramírez*, supra, pág. 954, al concluir que

> ... si en determinado caso se ha de prescindir de la ficción corporativa, *ello depende de los hechos específicos de cada caso, a la luz de los principios generales arriba señalados, y ello debe ser resuelto por el tribunal de primera instancia al considerar la prueba.* (Énfasis suplido.)

El peso de la prueba descansa en la parte que propone la imposición de responsabilidad individual a los accionistas y corresponde al tribunal de primera instancia determinar, luego de apreciar la prueba, si procede el levantamiento del velo corporativo. *Fletcher*, supra, Vol. 1, Sec. 41.28, págs. 658–659; *Fleming v. Toa Alta Develop. Corp.*, supra, pág. 243; *Cruz v. Ramírez*, supra, pág. 954; *J.E. Candal & Co. v. Rivera*, supra, págs. 512–513. Al examinar la prueba, el tribunal deberá observar la naturaleza de las transacciones corporativas para no dejarse engañar por las formalidades de las mismas. *South P.R. Sugar Corp. v. Junta Azucarera*, 88 D.P.R. 43, 57 (1963).

En casos de corporaciones en las cuales una persona natural es el único accionista, los tribunales deberán ser cautelosos en el escrutinio de la prueba. Por un lado, el mero hecho de que una persona sea el único accionista de una corporación no autoriza la imposición de responsabilidad individual. *Swiggett v. Swiggett, Inc.*, supra, págs. 83–84; *Sucn. Pérez v. Gual*, supra, pág. 963; *Roberto Colón Mach. & Mfg. Co. v. Srio. de Hacienda*, 78 D.P.R. 912, 916 (1956). Por otro lado, sin embargo, la concentración de control e información en una sola persona puede dar lugar a que estas corporaciones sean fácilmente utilizadas para fines ilegítimos. *Fletcher*, supra, Vol. 1, Secs. 41.35 y 41.72, págs. 691 y 709–710; H.G. Henn y J.R. Alexander, *Laws of Corporations and Other Business Enterprises*, 3ra ed.,

Minnesota, Ed. West Publishing Co., 1983, Cap. 7, Sec. 147, págs. 352–354.

En atención a este riesgo, los tribunales no deberán reconocer la personalidad jurídica de este tipo de corporación cuando no hay la debida separación entre los asuntos corporativos y los personales, y cuando la corporación no descansa en un fundamento financiero adecuado para lograr los fines para los cuales fue incorporada. Henn y Alexander, *op. cit.*, pág. 353. Es decir, los tribunales no tienen por qué trazar una separación entre la persona del accionista y la corporación que el propio accionista procuró no observar, ni por qué reconocer responsabilidad limitada a un accionista que no le proveyó a la corporación un fundamento financiero adecuado para responder por las obligaciones corporativas. *Fletcher Cyc. Corp.*, Ed. Permanente, Sec. 41.72, págs. 709; Henn y Alexander, *op. cit.*, págs. 353–354.

■ Corresponde a la parte que propone el levantamiento del velo presentar prueba que demuestre que no existe una separación adecuada entre la corporación y el accionista, y que los hechos son tales que reconocer dicha persona jurídica equivaldría a "sancionar un fraude, promover una injusticia, evadir una obligación estatutaria, derrotar la política pública, justificar la inequidad, proteger el fraude o defender el crimen". *Srio. D.A.C.O. v. Comunidad San José, Inc.*, 130 D.P.R. 782, 798 (1992). Véanse, además: *Cruz v. Ramírez*, supra; *Fleming v. Toa Alta Develop. Corp.*, supra, pág. 243; *San Miguel Fertil. Corp. v. P.R. Drydock*, supra. El peso de la prueba no se descarga con la mera alegación de que la empresa es un álter ego de una persona, sino con prueba concreta que demuestre que la personalidad de la corporación y la del accionista no se mantuvieron adecuadamente separadas. *Fletcher*, supra, Vol. 1, Sec. 41.35, pág. 691; *San Miguel Fertil. Corp. v. P.R. Drydock*, supra, págs. 424 y 430; *J.E.*

*Candal & Co. v. Rivera*, supra, pág. 172; *Sucn. Pérez v. Gual*, supra, pág. 964.([3])

B. En el caso de autos, el señor Acosta Lespier era el presidente, agente residente y único accionista de la corporación querellada Luis Acosta Construction Corp. Además, era uno de los dos (2) accionistas iniciales de la corporación resultante Constructora Laguna, Inc., antes de la venta de las acciones al señor Cáceres Troncoso.

La posición de D.A.Co. se reduce a dos (2) alegaciones: (1) que no existía separación entre el señor Acosta Lespier y las corporaciones Luis Acosta Construction Corp. y Constructora Laguna, Inc., y (2) que éste usó la fusión corporativa y la venta de las acciones de la corporación resultante para evadir una obligación legítima. En apoyo de estas alegaciones, D.A.Co. ofreció como *única prueba* el hecho de que el señor Acosta Lespier era el presidente y único accionista de la corporación querellada y uno de los dos (2) accionistas iniciales de la corporación resultante. No presentó prueba sobre la manera en la cual el señor Acosta Lespier manejaba los asuntos corporativos ni sobre la naturaleza o el funcionamiento de ambas corporaciones.

El tribunal de instancia citó como único fundamento para su decisión de descorrer el velo corporativo la cláusula cuarta del contrato de compraventa de las acciones de la corporación resultante Constructora Laguna, Inc., que disponía que dichas acciones estaban "libre de toda carga, gravamen, embargo, limitación, orden, sentencia, laudo,

---

([3]) En otras jurisdicciones, los tribunales han considerado, entre otros, los factores siguientes al determinar si ha existido una separación adecuada entre la corporación y su accionista para fines de descorrer el velo corporativo: (1) el control del accionista sobre los asuntos corporativos; (2) el trato de los activos de la corporación como activos personales; (3) el retiro irrestricto del capital corporativo; (4) la mezcla de activos personales con activos corporativos; (5) la estructura de capital inadecuada de la corporación; (6) la falta de récord corporativos; (7) la inobservancia de formalidades corporativas; (8) la inactividad de los demás oficiales y directores; (9) la práctica de no declarar dividendos; (10) la presentación pública del accionista como personalmente responsable por las obligaciones de la corporación, y (11) el manejo de la corporación sin atención a su personalidad independiente. 1 *Fletcher Cyc. Corp.* Secs. 41.10, 41.35 y 41.72, págs. 614–617, 691–692 y 710 (Perm. ed. 1982).

reclamación, litigio, contrato, causa de acción que pueda restringir o afectar el título legal, pleno dominio y/o facultad dispositiva" de los vendedores de las mismas, el señor Acosta Lespier y el señor Chevres.([4]) Según el tribunal de instancia, esta cláusula justifica la imposición de responsabilidad personal al señor Acosta Lespier porque allí éste manifestó que *las acciones* de la corporación resultante estaban libre de toda carga o gravamen a sabiendas de que la *corporación* querellada y luego fusionada Luis Acosta Construction Corp. estaba sujeta a la orden de D.A.Co. Anteriormente hemos resuelto que el mero hecho de que una persona natural sea dueña de todas las acciones de una corporación, por sí solo, no autoriza a los tribunales a ignorar la personalidad jurídica de la corporación. *Swiggett v. Swiggett, Inc.*, supra, págs. 83–84. Por otro lado, tampoco lo autoriza el hecho de que un accionista sirva como oficial de la corporación. Señalamos, a manera de ejemplo, que si una corporación organizada con arreglo al Art. 1102(c) de la Ley General de Corporaciones, 14 L.P.R.A. sec. 1102(c), tiene un solo accionista, dicho artículo le concede "plenos poderes para dirigir y administrar los negocios y asuntos de la corporación". Es una realidad que las corporaciones, como personas jurídicas, sólo pueden actuar a través de personas naturales. *Sucn. Santaella v. Srio. de Hacienda*, supra, pág. 451.

Por lo tanto, el hecho de que el señor Acosta Lespier haya sido el presidente, agente residente y único accionista

---

([4]) Cabe señalar que fue el señor Acosta Lespier, no D.A.Co., quien presentó el contrato de compraventa de acciones ante el tribunal de instancia. Al hacer su determinación, el tribunal de instancia tuvo ante sí solamente dicho contrato y las certificaciones del Departamento de Estado sobre la fusión corporativa y el cambio de nombre de la corporación resultante. D.A.Co. no procuró la presentación del acuerdo de fusión, los certificados de incorporación u otros documentos o récord corporativos. Tampoco presentó prueba de que existiera una práctica de la corporación querellada Luis Acosta Construction Corp. o del señor Acosta Lespier que transcendiera los intereses particulares de las partes en el caso de autos, afectara a otros consumidores y derrotara la política pública que le compete a D.A.Co. implantar. *Srio. D.A.C.O. v. Comunidad San José, Inc.*, 130 D.P.R. 782 (1992).

de la corporación querellada Luis Acosta Construction Corp., de por sí, no justifica la imposición de responsabilidad personal señalada por la orden de D.A.Co. Igualmente, tampoco lo justifica el solo hecho de que el señor Acosta Lespier haya sido uno de los dos (2) accionistas iniciales de la corporación resultante Constructora Laguna, Inc.

Por otro lado, la fusión corporativa y la venta de las acciones de la corporación resultante, por sí solas, no constituyen prueba que justifique la imposición de responsabilidad personal. *La corporación Luis Acosta Construction Corp. continúa con vida jurídica, y la corporación resultante Constructora Laguna, Inc., no ha sido sustituida o acumulada como parte.* D.A.Co. aún no ha intentado ejecutar la orden contra esta última corporación. En ausencia de prueba que demuestre la inhabilidad de ambas corporaciones para responder por la orden de D.A.Co., o que estas transacciones no fueron transacciones *bona fide*, no podemos concluir que la fusión o la venta de acciones tuvieron el efecto de evadir una obligación legítima y derrotar la política pública que corresponde implantar a D.A.Co.

En cuanto a la cláusula cuarta del contrato de compraventa de las acciones, es preciso señalar que dicha cláusula disponía solamente que *las acciones* de la corporación resultante Constructora Laguna, Inc. estaban libre de toda carga o gravamen que limitara la facultad dispositiva de sus titulares. Ante el tribunal de instancia no se presentó prueba alguna de que esta disposición haya sido falsa, es decir, de que al momento de la compraventa existiera carga, gravamen, reclamación, litigio, orden o sentencia alguna contra dichas *acciones*. El mero hecho de que al momento de la compraventa la corporación querellada Luis Acosta Construction Corp. haya estado sujeta a la orden de D.A.Co., no implica que las acciones de la corporación resultante hayan estado sujetas a carga o gravamen que afectara la facultad de sus titulares para enajenarlas. La orden de D.A.Co. iba dirigida a *la corporación* querellada

Luis Acosta Construction Corp., luego fusionada en la corporación resultante Constructora Laguna, Inc. Por lo tanto, la obligación correspondía a la corporación querellada y, por medio de la fusión, a la corporación resultante. El tribunal de instancia confundió una orden contra una corporación constituyente absorbida en la fusión con una orden dirigida contra las acciones de la corporación resultante de dicha fusión que limitara la facultad dispositiva de sus titulares. El hecho de que en su día las acciones de la corporación resultante pudieran ser llamadas a responder en caso de incumplimiento por la corporación no significa que al momento de la compraventa las acciones hayan estado sujetas a la orden de D.A.Co.

Por lo tanto, y en ausencia de prueba adicional, no procedía descorrer el velo corporativo e imponer responsabilidad personal al señor Acosta Lespier por la orden de D.A.Co. contra la corporación querellada Luis Acosta Construction Corp. Por un lado, D.A.Co. no presentó prueba alguna que demostrara que no existía separación entre la persona jurídica de la corporación querellada y el señor Acosta Lespier, ni que este último haya utilizado la figura corporativa para evadir una obligación legítima o derrotar la política pública. Por otro, tampoco presentó prueba que indicara que lo dispuesto en la cláusula cuarta del contrato de compraventa de acciones de la corporación resultante no fuera cierto. Dicha cláusula, *por sí sola*, es prueba insuficiente para justificar el levantamiento del velo corporativo.

Debe quedar claro, sin embargo, que esta decisión no impide que el tribunal de instancia, ante prueba adicional, pueda determinar que no existía una separación adecuada entre el señor Acosta Lespier y las personas jurídicas de las corporaciones, y que la fusión corporativa y la venta de acciones de la corporación persiguieron evadir una obligación legítima y derrotar la política pública que D.A.Co. tiene que poner en vigor. *Roberto Colón Mach. & Mfg. Co.*

*v. Srio. de Hacienda,* supra, pág. 917. D.A.Co. aún tiene plena oportunidad de ofrecer prueba que justifique el levantamiento del velo corporativo y la imposición de responsabilidad personal al señor Acosta Lespier. *Srio. D.A.C.O. v. Comunidad San José, Inc.,* supra; *San Miguel Fertil. Corp. v. P.R. Drydock,* supra, pág. 430; *South P.R. Sugar Corp. v. Junta Azucarera,* supra, pág. 56; *Roberto Colón Mach. & Mfg. Co. v. Srio. de Hacienda,* supra, pág. 917.

## VI

▌ No concluimos sin antes señalar que existen recursos legales adicionales para obtener el cumplimiento de la orden de D.A.Co. contra la corporación querellada Luis Acosta Construction Corp. En primer lugar, D.A.Co. tiene a su disposición todos los medios de ejecución de sentencia que proveen las Reglas de Procedimiento Civil. 3 L.P.R.A. sec. 341e(i). En segundo lugar, los tribunales tienen la facultad de encontrar incurso en desacato al oficial de una corporación, en su capacidad personal, por el incumplimiento de una orden dirigida contra la corporación. *Srio. D.A.C.O. v. Comunidad San José, Inc.,* supra. Si bien hemos resuelto que el tribunal no puede encarcelar al oficial porque la corporación no ha cumplido con una orden de pagar una deuda monetaria impuesta por D.A.Co. como consecuencia de una controversia estrictamente privada, mediante el procedimiento de desacato correspondiente se puede imponer una multa al oficial en su carácter personal y así evitar que el incumplimiento quede impune o su efecto adverso sobre los consumidores sin reparar. *Srio. D.A.C.O. v. Comunidad San José, Inc.,* supra; *Pueblo v. Lamberty González,* 112 D.P.R. 79, 82 (1982).

Por los fundamentos antes expuestos, *se dictará sentencia mediante la cual se revoque la resolución del Tribunal Superior, Sala de Arecibo, y se devuelven los autos para que*

*D.A.Co. tenga oportunidad de presentar prueba para justificar el levantamiento del velo corporativo de la corporación querellada Luis Acosta Construction Corp. y para que mediante el procedimiento correspondiente se determine si procede encontrar al señor Acosta Lespier incurso en desacato por el repetido incumplimiento por parte de dicha corporación de la orden de D.A.Co. y, de así determinarlo, se le imponga una multa conforme a derecho.*

El Juez Asociado Señor Negrón García se inhibió. El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente.

— O —

Opinión disidente del Juez Asociado Señor Fuster Berlingeri.

Aunque coincido con los pronunciamientos doctrinales expuestos en las partes II y III de su opinión, creo que el resultado al que llega la mayoría en este caso y algunas de las expresiones normativas en la parte IV de la misma no son compatibles con el claro sentido de nuestros repetidos pronunciamientos sobre cuándo procede descorrer el velo corporativo.

Una de las dos normas básicas aplicables aquí la expresamos de forma precisa en *Cruz v. Ramírez*, 75 D.P.R. 947 (1954), y la hemos reiterado en muchas ocasiones, *Fleming v. Toa Alta Develop. Corp.*, 96 D.P.R. 240 (1968); *González v. San Just Corp.*, 101 D.P.R. 168 (1973), y casos allí citados. En *Cruz v. Ramírez*, supra, pág. 954, señalamos que:

Estamos conscientes de que la corporación tiene una personalidad jurídica independiente de sus accionistas. Pero si la corporación es meramente un "alter ego" o conducto o instrumento económico pasivo ("business conduit") de sus únicos accionistas, recibiendo éstos exclusiva y personalmente los bene-

ficios producidos por la gestión corporativa, entonces los accionistas serían individualmente responsables si ello es necesario para evitar un fraude o la realización de un propósito ilegal o para evitar una clara inequidad o mal ("wrong").

Hemos resuelto, además, numerosas veces que el anterior principio general de derecho corporativo depende en su aplicación de los hechos y las circunstancias de cada caso. Véanse, entre otros: *South P.R. Sugar Corp. v. Junta Azucarera*, 88 D.P.R. 43, 56 (1963); *J.E. Candal & Co. v. Rivera*, 86 D.P.R. 508 (1962); *Roberto Colón Mach. & Mfg. Co. v. Srio. de Hacienda*, 78 D.P.R. 912 (1956); *Sucn. Pérez v. Gual*, 76 D.P.R. 959 (1954).

*¿Cuáles son aquí los hechos medulares a los fines de decidir si debe responsabilizarse al accionista individualmente?* Según se desprende de la propia opinión de la mayoría: (1) el señor Acosta Lespier era el presidente, agente residente y único accionista de la corporación querellada; (2) el 6 de abril de 1984 el Departamento de Asuntos del Consumidor (D.A.Co.) le ordenó a la corporación querellada corregir determinados defectos de construcción en la residencia que había vendido a la querellante; (3) a pesar de estar en vigor dicha orden contra la corporación querellada, y aun cuando ésta no había cumplido con la misma, la corporación querellada fue disuelta por fusión con otra entidad corporativa, *disolución que es estrictamente atribuible a Acosta por ser el único accionista y presidente de la corporación querellada*; (4) poco después de la fusión, Acosta, que era condueño de las acciones de la entidad resultante, vendió dichas acciones a un tercero no residente de Puerto Rico, haciéndole la representación de que las mismas estaban libres de carga o reclamación, pero sin decirle que la entidad en sí estaba legalmente sujeta al deber de corregir los defectos de construcción en cuestión, en virtud de lo dispuesto en el Art. 903 de la Ley de Corporaciones, 14 L.P.R.A. sec. 1903, y (5) ninguna de estas transacciones le fue notificada a D.A.Co., por lo cual esta

agencia no estaba en posición de hacer valer contra la nueva entidad la orden pendiente.

La cadena de hechos antes mencionada claramente sugiere una posible manipulación de la ficción legal corporativa por parte de Acosta, que resultó innegablemente en una *clara inequidad* para el querellante, quien no logró la reparación de los defectos de construcción a que tenía derecho. Los elementos, pues, de la norma de *Cruz v. Ramírez*, supra, estaban satisfechos, al menos prima facie. Vistos en conjunto, de los hechos relatados podía inferirse, al menos *juris tantum*, que la corporación querellada era meramente un álter ego de Acosta.

Lo que es más importante aún, la presunta manipulación de la ficción corporativa también tuvo el efecto de frustrar la implementación de la orden de D.A.Co., derrotando en ese sentido la clara política pública de protección al consumidor encarnada en la ley que creó a dicho departamento. Este aspecto del caso es muy pertinente y nos trae a la segunda norma básica aplicable aquí. Ya antes habíamos resuelto con suma claridad que "el velo corporativo se descorrerá cuando la personalidad corporativa se utilice para 'derrotar la política pública' ... [y] las entidades corporativas pueden descartarse cuando son instrumentos para evadir un claro propósito legislativo ...". *South P.R. Sugar Corp. v. Junta Azucarera*, supra, págs. 56–57. Nótese que en tales casos el mandato de desechar la ficción corporativa es *terminante*; es decir, no se ha de permitir que mediante una interpolación corporativa se derrote una política legislativa, *independientemente* de que ello haya sido o no el propósito de esa interpolación. Basta con que tal haya sido su *efecto o resultado. South P.R. Sugar Corp. v. Junta Azucarera*, supra, pág. 57; *Quiñones Rosa v. Fajardo Development Co.*, 90 D.P.R. 684 (1964). En otras palabras, nuestros pronunciamientos anteriores aplicables a casos como éste *requieren* que se descorra el velo corporativo si están presentes *dos* y sólo *dos* hechos esen-

ciales: (1) que existan determinadas transacciones corporativas, o sea, el elemento de *interpolación corporativa*, y (2) que como *resultado* de esa interpolación, sea ésta deliberada o casual, *se frustre una política pública.*

Independientemente de si hubo o no la *manipulación* antes aludida, en este caso no puede negarse que hubo una *interpolación corporativa.* Ocurrieron varias transacciones sucesivas en las cuales se sustituyó una corporación por otra y luego se vendieron las acciones de ésta, todas ellas teniendo como actor central común al señor Acosta. No puede negarse tampoco que *el efecto* de esa interpolación fue que el querellante sufriera un daño, una inequidad, y que se evadiese un claro propósito legislativo. Procedía, pues, que se descorriese el velo corporativo, a tenor con la clara doctrina sobre el particular que prevalece en nuestra jurisdicción.

La mayoría no llega ahora al resultado que nuestros claros precedentes inexorablemente requieren porque introduce en su decisión un *nuevo elemento* que antes no formaba parte de nuestra doctrina. La mayoría ahora le impone a la parte que invoca la necesidad de descorrer el velo corporativo una grave carga probatoria que no existía antes, y que en efecto anula el sentido de la doctrina vigente. Se le exige al promovente que demuestre, "con prueba concreta", "que la personalidad de la corporación y la del accionista no se mantuvieron adecuadamente separadas", sugiriendo a la vez en una nota al calce un largo listado de factores que pueden satisfacer tal exigencia. Opinión mayoritaria, págs. 927–928. Aunque nuestras Reglas de Evidencia permiten que cualquier hecho se pruebe circunstancialmente o por inferencia (Regla 10 de Evidencia, 32 L.P.R.A. Ap. IV), ahora la mayoría le concede a las corporaciones un privilegio especial al exigir una compleja "prueba concreta" del hecho en cuestión. Es decir, la mayoría en su opinión no sólo *abandona* la norma vigente de ·

que debe descorrerse el velo si se dan los dos elementos antes aludidos, sino que la sustituye por una nueva norma de prueba especial que es más onerosa que la que prevalece de ordinario en nuestro ordenamiento jurídico. En términos prácticos, el resultado neto de esta nueva norma que anuncia la mayoría es que hará muy difícil que en casos como el de marras se logre el propósito de nuestra legislación y de muchas de las leyes de corporaciones estatales de impedir que se manipule la fusión o disolución corporativa para evadir responsabilidades legales. La mayoría en la parte II de su opinión explica muy bien cómo y por qué surgió históricamente ese propósito. Lamentablemente, la norma que anuncia en este caso no es enteramente compatible con dicho propósito, que evidentemente es el que informa nuestros pronunciamientos judiciales anteriores sobre el particular.

Somos conscientes del rol que en nuestros días y en nuestra sociedad de mercado tiene la corporación de pocos accionistas o de accionista único. Disfruta de personalidad jurídica independiente por razones que manda el sistema económico. Pero no parece propio que aquí, en este caso, de buenas a primeras, "legislemos" un nuevo privilegio especial para estas entidades sin explicar por qué ahora ello es necesario, sobre todo cuando al así hacerlo nos lleva a un resultado que es a todas luces injusto e insatisfactorio, que frustra una importante política pública del país y que desecha una clara corriente doctrinal anterior. El Tribunal Supremo de Estados Unidos, enfrentado un problema análogo en *Chicago M. & St. P. Ry. v. Minn. Civic Assn.*, 247 U.S. 490 (1918), dijo que los tribunales no se deben cegar o engañar por meras formalidades y deben bregar con la substancia de las cosas, como si la ficción corporativa no existiese y según la justicia del caso lo amerite. Esa ha debido de ser la posición de la mayoría, y como no lo es, yo disiento.