Aponte Jiménez, Juez Ponente
*1128 TEXTO COMPLETO DE LA SENTENCIA
Apela ante nos el Consejo de Titulares del Condominio Ashford Valencia ubicado en el Condado. Solicita que revoquemos la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, que al negarse a desestimar la demanda presentada en su contra adjudicó a los demandantes, en su carácter de accionistas de la Corporación Aleo, Inc., noventa y nueve punto cincuenta y tres metros cuadrados de terreno que representan un exceso en la cabida del solar donde ubica el referido Condominio. Al así dictaminar, se basó en la doctrina de enriquecimiento sin causa. Según el foro de instancia, de adjudicar el referido exceso al Consejo de Titulares del Condominio sin el pago correspondiente, equivale a un enriquecimiento de éstos y el empobrecimiento de los demandantes como accionistas de Aleo. Por los fundamentos que discutiremos, se revoca la sentencia apelada. En su lugar se decreta la desestimación de la demanda presentada por los demandantes en contra de los demandados-apelantes.
Los hechos relevantes no están en controversia. Los mismos surgen de la sentencia apelada sin que las partes los cuestionen. La estructura existente para el 1953 donde hoy se levanta el Condominio Ashford Valencia en el Condado era propiedad del matrimonio Arturo H. Gallardo y María Clausells. La misma enclavaba en un solar ubicado en el número 876 de la Avenida Ashford del referido sector de San Juan. Dicho solar aparecía inscrito en el Registro con una cabida de 1,116.53 metros cuadrados. En el 1971, los esposos Gallardo-Clausells instaron ante el extinto Tribunal Superior un expediente de dominio con el propósito de incluir un alegado exceso de cabida en el solar ascendente a 551.219 metros cuadrados. Aprobado el mismo por el tribunal, se ordenó su inscripción resultando el solar con una cabida de 1,667.272 metros cuadrados, o sea, 551.219 en exceso de la inscrita hasta ese momento. 
Mediante escritura pública número 30 de 27 de febrero de 1985, J.C. Alco, Inc. (“Alco”), una corporación doméstica debidamente autorizada y registrada en el Departamento de Estado del Estado Libre Asociado de Puerto Rico para hacer negocios, adquirió el solar y la estructura de Arturo Gallardo Clausells y Mario Gallardo Clausells. Los principales accionistas de Aleo eran Héctor Manuel Torres y los demandantes Carlos Conde, Judy Gordon, José Alegría Campos y Yolanda Benitez de Alegría. Con el propósito de remodelar el inmueble y construir otras estructuras en el mismo solar, solicitó varios permisos ante las agencias *1129 gubernamentales. Debido a que éstos fueron denegados, acudió al Tribunal Superior, Sala de San Juan. Solicitó se ordenase que les fueran concedidos. Al caso se le asignó el número 85-5684.
Por entender que el exceso de cabida de 551.219 metros cuadrados que habían sido agregados al solar mediante el aludido expediente de dominio formaba parte de la zona marítimo-terrestre y, por lo tanto, propiedad del Estado Libre Asociado de Puerto Rico (E.L.A.), el tribunal dictó sentencia el 18 de agosto de 1987 en dicho caso. Denegó los permisos solicitados. Determinó que el derecho de Aleo “se limitaba a la titularidad sobre el área original de 1,116.53 metros cuadrados y que, por lo tanto, no se extendía al área de 551.219 metros colindante con la [L]aguna del Condado que fuera objeto de la aprobación como exceso de cabida por la [rjesolución dictada el 28 de junio de 1970 en el caso [número] 70-2569 sobre Información de Dominio.” Id., pág. 5 sentencia apelada. Añadió que la cabida de 1,116.53 metros cuadrados en el solar que reflejaba la finca en cuestión coincidía con el resultado de la mensura efectuada por el Departamento de Obras Públicas, con el plano de deslinde levantado por dicha agencia y con los límites de la zona marítimo-terrestre. Id., sentencia dictada en el caso 85-5684, J.C. Alco Inc. v. Estado Libre Asociado de Puerto Rico.
Así las cosas, el 4 de noviembre de 1985, Aleo presentó una acción sobre sentencia declaratoria y mandamus contra el E.L.A. Solicitó que se declarara el derecho que pudiera tener sobre la cabida total de la finca en cuestión. El 20 de febrero de 1987, pendiente la referida acción de sentencia declaratoria, otorgó la escritura número 5A ante el notario Jacobo Ortiz Murías sobre Rectificación de Cabida, Segregación, Compraventa y Constitución de Servidumbre. Rectificó la cabida del aludido solar. Hizo constar que a tenor de un plano preparado por el ingeniero William Rodríguez Garratán y el certificado de mensura suscrito por éste, el solar tenía una cabida de 1,696.5 metros cuadrados en lugar de 1677.272, o sea, 19.228 metros más de los que añadió su anterior dueño. No surge del documento otorgado que se haya notificado al Estado Libre Asociado de Puerto Rico como colindante para que estuviese presente al efectuar la mensura.
Con el correspondiente permiso de la Administración de Reglamentos y Permisos (A.R.P.E.) procedió a segregar en la misma escritura un solar de 1,017 metros cuadrados. Dejó así un remanente de 679.50 metros cuadrados en la finca principal. Vendió a sus accionistas en el mismo acto dicho remanente por $100,000 constituyendo una servidumbre de paso sobre la parcela segregada a favor del remanente. En esa misma fecha otorgó ante el mismo notario la escritura número 6 sobre Constitución de Régimen de Propiedad Horizontal del Condominio Ashford Valencia. El solar convertido fue descrito con una cabida de 1,017 metros cuadrados según segregado de la finca principal. No hay constancia en los autos de que el tribunal tuviese conocimiento de esas escrituras otorgadas por Aleo.
El 18 de agosto de 1987, casi seis (6) meses después de haberse otorgado las susodichas escrituras números 5A y 6, el Tribunal de Primera Instancia declaró sin lugar la demanda sobre sentencia declaratoria y mandamus presentada por Aleo. Determinó que su derecho se limitaba a la titularidad sobre 1,116.53 metros y no sobre los 551.219 metros que fueron agregados mediante el expediente de dominio tramitado por los esposos Gallardo-Clausells, los cuales pertenecen al Estado Libre Asociado de Puerto Rico por ser parte de la zona marítimo-terrestre al colindar con la Laguna del Condado.
El 20 de abril de 1988, el Consejo de Titulares que se había constituido en el Condominio Ashford Valencia, luego de la venta de los apartamentos, presentó demanda contra Aleo ante el foro de instancia en el caso Civil Núm. KAC-88-0642. Solicitó que se declarara nula la referida escritura 5A, ya que los vendedores redujeron las áreas comunes del solar en perjuicio de los compradores de los apartamentos del Condominio, creando así una carga ilegal al constituir una servidumbre que era inexistente al momento de otorgarse los contratos de opción de compra de cada condómine en el edificio original. Esa demanda se consolidó con la de autos presentada el 11 de octubre de 1989 por los accionistas de Aleo como demandantes —caso civil *1130 número KAC-89-1576— donde éstos reclamaron ser los dueños de los 679.50 metros cuadrados remanentes, luego de ser segregado el solar de 1,017 metros cuadrados sometido al régimen de la Ley de Propiedad Horizontal. Alegaron, también, que el Consejo de Titulares había “cercado” la totalidad de la finca segregada haciéndola formar parte de la suya. Solicitaron que se le restituyera en la posesión del referido solar.
El tribunal dictó sentencia en el caso KAC-88-0642 presentado por la Junta del Ashford Valencia contra Aleo. Basándose en la sentencia emitida el 18 de agosto de 1988 en el caso civil número 85-5684 instado por Aleo contra el E.L.A., la cual determinó que los 551.219 metros cuadrados agregados al solar de Aleo mediante el frustrado expediente de dominio tramitado por los esposos Gallardo-Clausells pertenecían al E.L. A., decretó nula la escritura 5A en todos sus extremos. Resolvió, asimismo, que no procedía la segregación del solar reclamado de 679.50 metros porque eran terrenos del Estado. Declaró que Aleo “no era legítimo dueño de parte del terreno a ser segregado”. Refiriéndose al remanente de los 679.50 metros cuadrados que Aleo vendió a sus accionistas, aquí demandantes-apelados, añadió que de acuerdo a la sentencia que anuló el exceso de cabida inscrito por medio del expediente de dominio, el contrato de compraventa era también nulo pudiendo esa nulidad ser reclamada por el Consejo de Titulares del Condominio Ashford Valencia. Id., sentencia emitida el 15 de septiembre de 1994 en el caso KAC-88-0642, Consejo de Titulares del Condominio Valencia v. J.C. Alco, Inc., etc. Dicha sentencia, al igual que la del caso 85-5684, la cual anuló el expediente de dominio que añadió 551.219 metros al solar en cuestión por ser el terreno parte de la zona marítimo-terrestre del E.L.A., advino final y firme.
Lo anterior provocó que los accionistas de Aleo comparecieran en el caso de autos que presentaron en contra del Consejo de Titulares del Ashford Valencia, todavía pendiente de resolverse. Reclamaron que se le adjudicasen los 128 metros de terreno que constituyen la diferencia entre los 679.50 metros remanente de la finca principal que compraron a Aleo después de rectificada la cabida del solar y segregados los 1,017 metros, y los 551.50 metros que según resuelto en el caso 85-5684 (expediente de dominio) pertenecían al Estado Libre Asociado por ser parte de la zona marítimo-terrestre. Argumentaron que dichos 128 metros pertenecían a Aleo y no al gobierno por no estar incluidos en el terreno inscrito con el expediente de dominio que posteriormente se anuló. En la alternativa, afirmaron que ante el supuesto de que Aleo adquirió un solar de 1,116.53 metros cuadrados, solamente 1,017 metros fueron sometidos al régimen de la Ley de Propiedad Horizontal y luego vendidos a los compradores de los apartamentos, por lo cual la diferencia de 99.53 metros pertenece a Aleo, o a sus accionistas. El Ashford Valencia se opuso.
Luego de varias comparecencias de las partes, el Consejo de Titulares demandado presentó moción de desestimación. Se basó en que habiendo sido declarada nula la escritura 5A sobre rectificación de cabida y segregación, los 128 metros nunca fueron segregados. Adujeron que, en tal virtud, dicho terreno pertenece a la finca donde ubica el Condominio. Los demandantes se opusieron. Sostuvieron por su parte que los 128 metros nunca fueron sometidos al régimen de la Ley de Propiedad Horizontal, ya que el solar donde enclava la estructura se fijó y estableció en 1,017 metros según figura en la escritura número 6 otorgada para esos fines.
El Tribunal de Primera Instancia emitió sentencia. Denegó la reclamación de las partes en cuanto a los 128 metros cuadrados. Determinó que la misma no procedía, toda vez que al haberse declarado nula la escritura 5A en sentencia anterior, no se consumó la rectificación de cabida que produjo los 679.50 metros cuadrados que reflejó dicho documento. Id., págs. 9 y 10 sentencia apelada. Concluyó que el efecto de las dos sentencias emitidas en los casos 85-5684 y KAC-88-0642 “fue establecer la existencia de una sola finca con una área superficial de 1,116.53 metros cuadrados.” Página 7 de la sentencia apelada. Añadió que la base para su “determinación girajba] en tomo a la finca original de 1,116.53 metros cuadrados, un [rjégimen de [pjropiedad [hjorizontál a base de la escritura de constitución del mismo de 1,017.00 metros cuadrados y de un predio en controversia de 99.53 metros cuadrados.” Pág. 10, sentencia apelada. Denegó la moción de *1131 desestimación del Ashford Valencia.
Dispuso, en cuanto al solar donde enclava el Condominio, que existe un exceso de noventa y nueve punto cincuenta y tres (99.53) metros cuadrados, el cual constituye la diferencia entre la cabida de 1,116.53 metros original, según reconocida en la sentencia dictada el 18 de agosto de 1987 en el caso 855684, y la de 1,017 metros que figuró Aleo al describir el solar en la escritura constitutiva del régimen de propiedad horizontal y en las de venta de los apartamentos a sus compradores. Adjudicó dicha diferencia a los demandantes como accionistas de Aleo. Ordenó a las partes la identificación de los puntos y su mensura a los fines de establecer la descripción correcta y las colindancias de las participaciones que permitan la publicación registral correcta.
Nada explica el tribunal sentenciador, sin embargo, sobre cómo la escritura 5A sobre rectificación de cabida y segregación, a pesar de haberse decretado nula, le pudo servir de base para establecer la segregación de un solar con cabida de 1,017 metros cuadrados que fuera sometido por Aleo al régimen de propiedad horizontal y luego vendido a los fines de adjudicar 99.53 metros, pero no así para considerar los 679.50 metros del remanente con el propósito de conferir título sobre el exceso de los 128 metros reclamados por las partes. Sobre ese extremo, no incluyó determinaciones de hecho y conclusiones de derecho que justifiquen su razonamiento. Advertimos que tampoco dispuso sobre la citación de los colindantes para realizar el deslinde ordenado, entre los cuales se encuentra el Estado Libre Asociado de Puerto Rico en el área conocida como zona marítimo-terrestre.
Inconforme con dicha determinación, el Consejo de Titulares del Ashford Valencia presentó el recurso de apelación de que nos ocupamos. Imputa al tribunal de instancia que incidió al decretar que los demandantes son dueños de los 99.53 metros cuadrados adjudicados, no empece la nulidad de la referida escritura 5A. Arguyen que al ésta declararse nula, se dispuso de la titularidad de toda la finca de 679.50 metros por ésta nunca haber existido y que los alegados 99.53 metros cuadrados, de darse, revierten a la finca original quedando la misma con su cabida de 1,116.53 metros cuadrados. Ante nos, los codemandantes-apelados, José E. Alegría Campos y su esposa, Yolanda Benitez de Alegría, por su parte sostienen que habiéndose expresado la cabida de la finca como de 1,017 metros cuando Aleo vendió los apartamentos, el derecho del Condominio no puede exceder dicha cantidad.
El 2 de septiembre de 1999, emitimos resolución. Requerimos a las partes que sometieran copia de las escrituras de compraventa de los apartamentos del Condominio. En cumplimiento, éstos comparecieron en moción conjunta. Nos informaron que sólo habían podido conseguir seis (6) de las diez (10) escrituras originales de compraventa de los apartamentos del Condominio. Sometieron dos de ellas e hicieron constar que las restantes eran sustancialmente similares con respecto a los hechos expositivos, así como sus términos y condiciones.
El 4 de octubre de 1999, instruimos a las partes para que acudieran al Registro sobre Régimen de Propiedad Horizontal del Registro de la Propiedad correspondiente a la sección del Condado a los fines de cotejar la inscripción original de los cuatro apartamentos restantes con el propósito de verificar la cabida del solar que se figuró en cuanto a ellos. Mediante escrito intitulado “Moción en Cumplimiento de Resolución del 4 de octubre de 1999”, el Ashford Valencia compareció. Nos informa que en el Registro de la Propiedad no se incluyó una descripción de la finca en cuanto a los cuatro (4) apartamentos en cuestión, “sino que se hace referencia al inmueble sometido al régimen de propiedad horizontal y se procede a describir propiamente el apartamento. ” Los codemandantes-apelados no comparecieron esta vez.
Las escrituras de compraventa que nos suplen las partes otorgadas por Aleo como parte vendedora, reflejan que el solar donde ubica el Condominio es descrito con una cabida de mil diecisiete (1,017) metros cuadrados, *1132 la misma que se hizo constar en la escritura número 6 otorgada también por Aleo al convertir el solar y la estructura al régimen de propiedad horizontal, luego de segregado de la finca principal. Las otras que no se presentaron, a tenor de lo consignado por el Ashford Valencia, aunque no describen la cabida del solar, hacen mención a que es el mismo sometido al régimen de propiedad horizontal. Ibid., Moción en Cumplimiento de Resolución presentada ante este Foro el 29 de septiembre de 1999, suscrita por las partes y Moción en Cumplimiento de Resolución de 4 de octubre de 1999 presentada por la parte demandada-apelante, Consejo de Titulares del Ashford Valencia.
Con ese marco factual en el horizonte decisorio, veamos a nuestro juicio el derecho aplicable. Primeramente, sabido es que todo contrato nulo es inexistente en Derecho desde el momento mismo en que se otorga. Nunca genera consecuencias de ley. Santiago Marrero v. Tribunal Superior, 89 D.P.R. 835 (1964). Se trata de la inexistencia misma del acto. Por razones de orden público, el acto nulo es insubsanable. No es susceptible de subsanación, confirmación, ni ratificación. La nulidad opera ipso jure sin necesidad de que exista intervención alguna de parte interesada o del organismo jurisdiccional. Por ello, una acción judicial solicitándola, se limita a declarar la inexistencia del acto y destruir la apariencia de validez del negocio. Besosa Quiñones v. Corp. Azucarera, 95 J.T.S. 13. En esa situación, las cosas revierten a la situación que prevalecía al momento del acto inexistente. Santiago Marrero v. Tribunal Superior, supra.
Aplicando los conceptos mencionados al caso de autos, conlleva determinar que los actos realizados en la escritura 5A sobre rectificación de cabida y segregación nunca se llevaron a cabo. Así fue decretado por el tribunal en la sentencia emitida en el caso KAC-88-0642 y reconocido por el foro de instancia en su dictamen apelado. Como resultado, la finca donde enclava el Condominio quedó con una cabida de 1,116.53 metros cuadrados y su último dueño fue Aleo, Inc. Veamos porqué.
La cabida de 1,667.272 metros cuadrados que se figuró por Aleo cuando adquirió el inmueble no tuvo vigencia alguna. Ello debido a que en sentencia anterior se resolvió que 551.219 metros de dicha cabida pertenecían al Estado. De igual forma, la rectificación de cabida que se efectuó aumentando la del solar en cuestión de 1,667.272 a 1,696.50, tampoco tuvo efectos jurídicos. Realmente, la finca adquirida por Aleo quedó, pues, con una cabida de 1,116.53 metros cuadrados, no de 1,667.272, 1,696.50, ni de 1,017. Así, específicamente, se estableció en las sentencias emitidas por el Tribunal de Primera Instancia el 18 de agosto de 1987 y el 15 de septiembre de 1994 en los casos 85-5684 y KAC-88-0642, respectivamente, al decretarse nulos, tanto el exceso de cabida inscrito por los esposos Gallardo Clausells como la escritura 5A de rectificación de cabida otorgada por Aleo.
Fortalece lo anterior, el hecho de que con posterioridad a la sentencia emitida en el caso KAC-88-0642, el mismo juez que la dictó ordenó que la propiedad “producto de la segregación de la escritura 5A revirtiera a su estado original como parte de la finca número 241 inscrita al foro 17 del tomo 44 de Santurce Norte. ” La cabida de la misma la estableció en 1,116.53 metros.
Igualmente y asumiendo que hubo un aumento en la cabida de la finca., la declaración de nulidad de la escritura 5A no creó un solar independiente de noventa y nueve punto cincuenta y tres (99.53) metros cuadrados. Tampoco concedió a los accionistas de Aleo co-propiedad sobre la misma. Ciertamente, al decretarse la nulidad de la escritura 5A otorgada por Aleo, conllevó que el acto de segregar 1,017 metros y, por consiguiente, la venta del remanente de la finca de 679.50 metros vendido a sus accionistas, quedaran ambos sin efecto. Nunca generaron consecuencias de ley. Como actuaciones nulas, fueron inexistentes. Véase, Pérez v. Martínez, 130 D.P.R. 134, 150 (1992). Para todos los fines, Aleo permaneció dueña de un solar cuya cabida es de 1,116.53 metros cuadrados el cual colinda por su lado sur, según la sentencia emitida en el caso 85-5684, con la zona marítimo-terrestre, no uno de 1,696.50 metros, ni de 1,017 como intentó segregar. Ello así quedó *1133 juzgado. Como resultado, en virtud de la nulidad decretada, los 99.53 metros cuadrados a que alude el foro de instancia en su sentencia, carecían de base y tracto.
Habiéndose determinado y fijado la cabida del alegado solar segregado por Aleo para todos los efectos en I,116.53 metros cuadrados, y siendo éste el mismo que se convirtió al régimen de propiedad horizontal para luego venderlo, no hay exceso alguno que calcular. La diferencia establecida por el foro de instancia al ajustar una supuesta cabida tomando como base un solar de 1,017 metros cuadrados cuya segregación se anuló, es irreal. Esta nunca existió de conformidad con las propias determinaciones incluidas en la sentencia apelada sobre el efecto total de lo resuelto en los casos 85-5684 y KAC-88-0642.
Incidió, pues, el foro apelado al concederle validez a la escritura 5A, considerar un solar de 1,017 metros y basar su dictamen en ello cuando previamente en el caso KAC-88-0642, un pleito entre las mismas partes por haberse consolidado con éste, decretó la nulidad absoluta de la segregación efectuada por Aleo, resolviendo, asimismo, que la finca en cuestión nunca dejó de ser una compuesta por 1,116.53 metros cuadrados. Si la cabida del solar convertido en propiedad horizontal por Aleo siempre fue de 1,116.53 metros cuadrados, la expresión de una cabida distinta, i.e., 1,017 metros, tanto en la aludida escritura número 6 como en las de venta de los apartamentos del Condominio, no tuvo el alcance que le pretenden dar los codemandantes-apelados. Resolver lo contrario equivale a permitirles exigir un remedio basado en la apariencia de validez de un acto decretado nulo por sentencia judicial.
Bajo esa misma premisa, de existir algún aumento en la cabida del solar donde ubica el Condominio, tampoco le corresponde a Aleo o a sus accionistas. Una revisión de las escrituras otorgadas por Aleo, como parte vendedora, evidencia que los apartamentos se vendieron a precio alzado por cantidades que variaban dependiendo de la cabida de la unidad vendida. Es decir, el precio de compraventa fue por una suma convenida y ajustada. En cuanto al solar, nada se expresa en ellas sobre si la venta se realizaba por unidad de medida. Sabido es que en las ventas por precio alzado, el vendedor tiene que entregar la cosa cierta que es la finca individualizada mediante la descripción de sus linderos. Todo lo que éstos comprendan ha de ser entregado a cambio del precio convenido. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1982, Tomo II, Vol. 2, pág. 169; Soc. de Gananciales v. Srio. de Justicia, 94 J.T.S. 124.
Sobre el particular, el Art. 1358 del Código Civil, 31 L.P.R.A. sec. 3820, establece, de otro lado, que la obligación de entregar la cosa vendida comprende la de poner en poder del comprador todo lo que exprese el contrato. A esos efectos dispone que si la venta de bienes inmuebles se hubiese hecho con expresión de su cabida, a razón de un precio por unidad de medida o número, tendrá obligación el vendedor de entregar al comprador, si éste lo exige, todo cuanto se haya expresado en el contrato. Si esto no fuere posible, podrá el comprador optar entre una rebaja proporcional del precio, o la rescisión del contrato, siempre que en este último caso, no baje de la décima parte de la cabida la disminución de la que se le atribuye al inmueble. Id.
Por su parte, el Art. 1360 del Código, 31 L.P.R.A. sec. 3822, preceptúa que:

“En la venta de un inmueble, hecha por precio alzado y no a razón de un tanto por unidad de medida o número, no tendrá lugar el aumento o disminución del mismo, aunque resulte mayor o menor cabida o número de los expresados en el contrato.

Esto mismo tendrá lugar cuando sean dos o más fincas las vendidas por un sólo precio; pero si además de expresarse los linderos, indispensables en toda enajenación de inmuebles, se designaren en el contrato su cabida o número, el vendedor está obligado a entregar todo lo que se comprenda dentro de los mismos linderos, aun cuando exceda de la cabida o número expresados en el contrato; y si no pudiera, sufrirá una 
*1134
disminución en el precio proporcional a lo que falte la cabida o número, a no ser que el contrato quede anulado por no conformarse el comprador con que se deje de entregar lo que se estipuló. ”

Lo anterior significa que al comprar una finca por precio alzado y no un tanto por unidad de medida, cualquier diferencia entre la cabida del solar expresada y la que efectivamente tiene la finca no da margen a reclamación o indemnización. Ruidíaz Barrios v. Salas, 103 D.P.R. 922 (1975). No son tantas o cuantas las unidades de medida que se trasmiten. Haya más o menos superficie, la gana o la pierde el comprador o el vendedor, según el caso. Soc. de Gananciales v. Srio. de Justicia, supra.
Según el Art. 11 de la Ley de Propiedad Horizontal, 31 L.P.R.A. sec. 129H, tanto el terreno como todo lo que fuere racionalmente de uso común del inmueble o necesario para su existencia y adecuado uso y disfrute es elemento común general del inmueble. Teniendo el solar donde ubica el Condominio una cabida de 1,116.53 metros cuadrados con sus linderos establecidos y habiendo ello quedado así juzgado en los casos seguidos por el Ashford Valencia y por Aleo, los dueños de los apartamentos tienen derecho a todo lo que incluye dicha finca. Ello comprende los noventa y nueve punto cincuenta y tres (99.53) metros cuadrados, de éstos producirse, que se le adjudicaron a los demandantes-apelados, aun cuando la cabida establecida haya sido una menor. De otro modo, el efecto sería una segregación no autorizada de la finca y la conservación de la actuación que el tribunal declaró nula en la escritura 5A. Ello sería incompatible con lo decretado antes en términos de la cabida del solar en cuestión y su colindancia con la zona marítimo-terrestre.
Independientemente de lo anterior, y a los fines de adjudicar lo que corresponde procesalmente en relación con la desestimación solicitada por el Ashford Valencia, es menester también resolver si la causa de acción presentada por los accionistas de Aleo para reclamar el alegado exceso en la cabida del inmueble vendido pertenece a éstos o a Aleo. A esos fines, acudimos a la Ley de Corporaciones en vigor al momento que los demandantes-apelados, como accionistas de Aleo, presentaron su demanda ante el foro de instancia. Como antes dicho, Aleo fue disuelta el 31 de octubre de 1988 por acuerdo de sus accionistas. La demanda en cuestión fue presentada el 11 de octubre de 1989, menos de un año después de la aludida disolución.
Conforme el Art. 1006 de la anterior Ley de Corporaciones, vigente al momento que los accionistas de Aleo reclamaron ante el tribunal su derecho al alegado exceso de cabida adjudicado, toda corporación que por limitación propia se extinguiera, o que de otro modo fuera disuelta, continuará como cuerpo corporativo por un término de tres (3) años después de la extinción o disolución. Id. El propósito de dicho término es extender la personalidad jurídica de una corporación extinguida o disuelta para que ésta pueda continuar como cuerpo corporativo a los fines de obtener y ejecutar sentencias a su favor. D.A.C.O. v. Alturas Fl. Dev. Corp. y Otros, 132 D.P.R. 905(1993).
Siendo de esta forma, Aleo, el dueño anterior de los apartamentos vendidos a los demandantes-apelantes, no tenían sus accionistas legitimación por carecer de causa de acción para reclamar lo que le competía a la corporación, en ausencia de justificación alguna. Dicha acción le correspondía a Aleo por no haber transcurrido tres (3) años desde su extinción al momento de instarse la misma. Por consiguiente, también incidió, por ese lado, el foro de instancia al adjudicar 99.53 metros del solar donde ubica el Ashford Valencia a los accionistas de Aleo bajo las circunstancias atinentes.
Finalmente, sabido es que la doctrina de enriquecimiento injusto utilizada por el tribunal a quo es un principio general del derecho fundado en la equidad. José Garriga v. Condominio Marbella, 97 J.T.S. 129. Para que se configure, tienen que cumplirse los siguientes requisitos: 1) existencia de un enriquecimiento; 2) un correlativo empobrecimiento; 3) la conexión entre empobrecimiento y enriquecimiento; 4) falta de causa que justifique el enriquecimiento; y 5) inexistencia de un precepto legal que excluya la aplicación del *1135 enriquecimiento sin causa. Ortiz Andújar v. E.L.A., 122 D.P.R. 817 (1988).
Como se aprecia, uno de los requisitos que se establece para su aplicación es cuando la ley no ha previsto una situación en la que se produce un desplazamiento patrimonial que no encuentra explicación razonable en el ordenamiento vigente. Ortiz Andújar, supra. En este caso, los articulados de ley sobre la nulidad de los actos y la venta de una finca por precio alzado enmarcan las figuras jurídicas que rigen. Por ende, es innecesario acudir a la doctrina de enriquecimiento injusto.
Por los fundamentos expuestos, se revoca la sentencia apelada. En su lugar, decretamos la desestimación de la acción presentada por los demandantes contra el Consejo de Titulares del Condominio Ashford Valencia en el caso KAC-89-1576. Se ordena la devolución de los autos originales en los casos KAC-88-0642 y KAC-89-1576 al tribunal de origen.
Lo acuerda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2000 DTA 82
1. Aparentemente la cabida original correcta debía ser 1,116.053 metros cuadrados en lugar de 1,116.53. Es como único, al sumarle 551.219, aumenta la cabida a 1,667.272 metros cuadrados.
2. El certificado de incorporación de dicha entidad corporativa se enmendó el 31 de octubre de 1988 a los fines de limitar su existencia hasta el 30 de noviembre de 1988.
3. De éstos, solamente José Alegría Campos y Yolanda Benitez de Alegría comparecen a oponerse al recurso de apelación presentado por los apelantes ante este Foro.
4. Al referirse en la escritura a la cabida del solar, Aleo expresa la misma como de 1,677.272 metros cuadrados en lugar de 1,667.272.
5. Uno de los contratos de promesa de compraventa otorgados por Aleo en el 1986 que figura en el expediente, describe el solar como de 1,667.272 metros cuadrados, la misma cabida que se produjo luego del expediente de dominio tramitado por los esposos Gallardo Clausells. En el mismo se establece la colindancia sur con la "Laguna del Condado”. En otro, se establece la cabida del solar en 800 metros cuadrados. Sin embargo, en este último se hace referencia a un edificio ubicado en la Avenida Cervantes que no concuerda con la del Ashford Valencia, a pesar de que se alude en el mismo al Condominio Ashford Valencia.
6. Carlos Conde del Pino, Judy Gordon de Conde, José Alegría Campos y Yolanda Benitez de Alegría.
7. La cantidad correcta según los autos es 551.219 metros cuadrados.
8. Dicho articulado permaneció igual en la nueva Ley de Corporaciones en vigor desde el primero (1ro) de enero de 1996. Véase, 14 L.P.R.A. sec. 3008, “Continuación limitada de la personal jurídica corporativa después de la disolución. ”