Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| JORGE MACHADO GUZMÁN Y OTROS | | APELACIÓN Procedente del Tribunal de Primera Instancia, Sala de San Juan |
|---|---|---|
| Apelante | | |
| v. | KLAN202400116 | Civil núm.: SJ2021CV04618 |
| JORGE MACHADO RUIZ Y OTROS | | Sobre: Revocación de donaciones |
| Apelada | | |

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres, la jueza Rivera Pérez y el juez Campos Pérez

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de marzo de 2024.

Comparecen ante este tribunal apelativo el Sr. Jorge Machado Guzmán y la Sra. Mariel Machado Ruíz (en conjunto, la parte apelante) mediante el recurso de epígrafe y nos solicitan la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 21 de diciembre de 2023, notificada al día siguiente. En el referido dictamen, el foro primario declaró *Ha Lugar* a la moción de desestimación presentada por el Sr. Jorge Machado Ruiz y la Sra. Eunice Machado Ruiz (en conjunto, la parte apelada), y desestimó con perjuicio la demanda de epígrafe instada en su contra.

Por los fundamentos que expondremos más adelante, confirmamos el dictamen impugnado.

**I.**

El 21 de julio de 2021, el Sr. Jorge Machado Guzmán por sí y juntamente con la Sra. Mariel Machado Ruiz, como apoderados de la Sra. Hilda Ruiz Acevedo, presentaron una *Demanda* sobre revocación de donación en la cual solicitaron se declaren como

correctas en derecho, las rescisiones de las donaciones efectuadas por el Sr. Jorge Machado Guzmán e Hilda Ruiz Acevedo a sus hijos, Jorge y Eunice, de las acciones de capital de la empresa Necco, Inc. En esencia, alegaron que la parte apelada, mediante reclamaciones judiciales incoadas en contra de sus padres, le imputaron actuaciones falsas en cuanto al uso indebido de los bienes corporativos; así como maltrato, agresiones físicas y verbales que son fuente de ingratitud y desheredación.[1] A su vez, adujeron que la parte apelada ha abandonado a los progenitores sin procurarlos ni preocuparse por su salud y bienestar, por lo que solicitaron al TPI le ordene a estos restituir las acciones corporativas donadas; así como sus frutos, más le imponga el pago de costas, gastos y honorarios de abogado.

Luego de varios trámites procesales, que no son necesarios consignar, el 9 de diciembre de 2022 la parte apelada presentó una *Moción de Desestimación de la "Demanda Enmendada"* en la cual se arguyó que ninguna de las alegaciones cumple con las exigencias del Artículo 1320 del Código Civil de 2020, 31 LPRA sec. 10065. Es decir, estos expresaron que "Las alegaciones no cumplen con los requisitos de ingratitud, tampoco de injurias graves por palabras, ni ocurrió la comisión de delito en contra de la persona, la honra o los bienes de los donantes, ni tampoco les fue negado indebidamente alimentos a los donantes. 31 LPRA § 2045. Jorge y Eunice nunca han sido convictos de delito por actos contra Jorge Padre e Hilda, su honra o sus bienes y tampoco se negaron a proveerles alimentos,

---

[1] El 8 de abril de 2022, falleció la Sra. Hilda Ruiz (QEPD) y el TPI ordenó la sustitución de parte. El 12 de mayo de 2023, el TPI dictó una *Resolución* declarando *No Ha Lugar* a la solicitud de desestimación instada al amparo de la Regla 10.2 de las de Procedimiento Civil por la parte apelada y ordenó a la parte apelante a enmendar la demanda a los fines de esgrimir con especificidad los elementos y hechos que dan base a su reclamación. De igual manera, determinó que en esta causa de acción las disposiciones legales aplicables son las del Código Civil de 2020. El 4 de octubre, se declaró *Ha Lugar* a la sustitución de parte.

pues los últimos nunca los han necesitado y tampoco se los han ordenado a los primeros."[2]

La parte apelante presentó su oposición alegando que la ley impone al donatario la obligación de cumplir con unos principios morales de agradecimiento hacia el donante, hasta el momento de su muerte y ante su incumplimiento, procede revocar la donación. Al respecto, estos indicaron que "En el caso de autos, los donatarios se han servido precisamente del bien donado para hostigar a sus padres donantes con procedimientos judiciales frívolos injuriarlos acusándolos de ladrones, maltratantes y asesinos."[3] En síntesis, señalaron que las alegaciones de la demanda enmendada cumplen cabalmente con los preceptos requeridos en el código civil.

Luego de analizados los argumentos de ambas partes, el TPI emitió la *Sentencia* recurrida declarando *Ha Lugar* el petitorio desestimatorio. En resumen, el foro recurrido razonó lo siguiente:[4]

- Aún tomando como ciertas las alegaciones de la demanda enmendada **no surge que se cumpla con ninguno de los supuestos de indignidad o desheredación** que den lugar a la revocación de las donaciones, según los criterios establecidos en el Código Civil y la jurisprudencia.
- En la Resolución del 9 de mayo de 2022 ya se había determinado que "las desavenencias y agravios familiares sobre el funcionamiento de una empresa no son motivos suficientes para la revocación de una donación". Las alegaciones de la demanda enmendada van dirigidas, en su mayoría**, a cuestionar el manejo de la corporación** por parte del demandado Jorge Machado Ruiz y los **incidentes relacionados a cuestionamientos familiares por asuntos de negocio**.
- También se alegó repetidamente que las demandas presentadas en los casos SJ2018CV10602 y SJ2018CV10603, de los cuales tomamos conocimiento judicial, fueron instadas con el propósito de causar daño a sus padres y a su hermana. Según adelantamos, estos actos, de por sí, no configuran el maltrato, abandono e injurias graves que son causales de indignidad y desheredación que, a su vez, dan lugar a la revocación de las donaciones.
- El hecho de que **las corporaciones hubiesen demandado a los aquí demandantes** por cobro de dinero **no implica un acto de maltrato o injuria grave** que dé lugar a revocar las donaciones. En ese

---

[2] Véase el Apéndice del Recurso, a la pág. 186.
[3] *Íd.*, a la pág. 261.
[4] *Íd.*, a las págs. 561-565.

> contexto, reiteramos lo dispuesto en la Resolución de 9 de mayo de 2022 en cuanto a que las diferencias por el manejo de la corporación no son fundamento para revocar las donaciones.
>
> - No podemos considerar que las **expresiones formuladas en el transcurso de un pleito judicial** estén revestidas de la intención de injuriar que el Tribunal Supremo ha determinado es imprescindible al evaluar la gravedad de la injuria. De hecho, el litigio en el que se realizaron las expresiones del señor Machado Ruiz no ha concluido, y se desconoce el efecto de esas aseveraciones en la disposición final del caso.
> - Las causales de desheredación que tienen que ver con abandono, maltrato e injuria grave **requieren una intención específica de causar daño** que no puede considerarse configurada por la mera tolerancia.
> - Las alegaciones de la demanda enmendada no le imputan al codemandado Machado Ruiz haber transferido sus acciones a terceros fuera del núcleo familiar. De hecho, no surge que el codemandado Machado Ruiz haya dejado de ser el poseedor de las acciones desde que le fueron donadas al presente. Así, no se fundamenta alegación alguna de **incumplimiento con las condiciones de la donación**.
> - De todas formas, la presente causa de acción está caducada. [Énfasis nuestro]

Insatisfecha, la parte apelante le solicitó al TPI reconsiderar su dictamen.[5] En el pedido se cuestionó la jurisprudencia citada, al entender que era inaplicable por estar basada en criterios de "adecuacidad" de la prueba y no de las alegaciones.[6] Reiteraron que en la demanda enmendada se alega de manera suficiente una injuria grave cometida con la intención de hacer daño, lo cual es bastante para "sobrevivir" una moción de desestimación. *Íd.* Por otro lado, argumentaron que la causa de acción no había caducado, ya que "[h]abiéndose contradicho las revocaciones el 8 de abril de 2021, ese es el día que comenzó a transcurrir el plazo de caducidad de seis meses para presentarse esta acción revocatoria, el cual expiraba en octubre de 2021."[7]

El 9 de enero de 2024, notificada al día siguiente, el TPI dictó la siguiente *Orden*:[8]

---

[5] *Íd.*, a las págs. 567-575.

[6] *Íd.*, a la pág. 572.

[7] *Íd.*, a la pág. 575.

[8] *Íd.*, a la pág. 597.

> Se reconsidera la sentencia dictada el 21 de diciembre de 2023 únicamente en cuanto a la determinación de que había caducado la acción revocatoria. Tiene razón la parte demandante en cuanto a que **no habían transcurrido los seis meses desde la contradicción de la revocación**. No obstante, los fundamentos ofrecidos en la moción de reconsideración sobre la desestimación en los méritos **por no configurarse las causales de revocación de donación** establecidas en el Código Civil **no nos mueven a modificar nuestro dictamen**. Por tanto, se declara no ha lugar la solicitud de reconsideración y **se mantiene la sentencia**, con la salvedad de que la acción no está caducada. [Énfasis nuestro]

Todavía inconforme, la parte apelante acude ante este foro revisor imputándole al TPI la comisión de los siguientes errores:

> ERRÓ EL TPI AL IMPONER UN ESTÁNDAR MÁS ALTO QUE EL DISPUESTO EN LA REGLA 7.2 DE LAS DE PROCEDIMIENTO CIVIL PARA LA SUFICIENCIA DE LAS ALEGACIONES, EL CUAL PERMITE QUE SE ASEVEREN EN TÉRMINO GENERALES TODO AQUELLO QUE NO SEA ERROR O FRAUDE.
>
> ERRÓ EL TPI AL CONCLUIR QUE LAS ALEGACIONES EN UN CASO CIVIL AUTOMÁTICAMENTE QUEDAN EXCLUIDAS DE SER CONSIDERADAS COMO FUNDAMENTO PARA REVOCAR UNA DONACIÓN.

El 16 de febrero de 2024, emitimos una *Resolución* concediéndole a la parte apelada el término de treinta (30) días para presentar su alegato en oposición. El 18 de marzo siguiente, se cumplió con lo ordenado, por lo que nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**La Moción de Desestimación**

La Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, dispone que las defensas que tienen las partes para fundamentar una moción de desestimación son las siguientes: falta de jurisdicción sobre la materia o la persona, insuficiencia en el emplazamiento o su diligenciamiento; dejar de exponer una reclamación que justifique la concesión de un remedio; o dejar de

acumular una parte que sea indispensable en el pleito. Para que proceda una moción de desestimación, bajo esta regla, "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor." *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank,* 193 DPR 38, 49 (2015); *Ortiz Matías et al. v. Mora Development,* 187 DPR 649, 654 (2013).

En fin, ante una moción de desestimación al palio de la Regla 10.2, la demanda y sus alegaciones han de ser consideradas por el tribunal lo más liberalmente posible a favor de la parte demandante. El tribunal que evalúa la moción de desestimación debe concederle a esta el beneficio de toda inferencia posible que pueda surgir de la demanda. Es norma asentada que no se desestimará la causa de acción, a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno, bajo cualquier estado de derecho que se pudiese probar en apoyo a su reclamación. J. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* 2da. ed., San Juan, Publicaciones JTS, 2011, T. II, a la pág. 530; *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank,* supra; *Ortiz Matías et al. v. Mora Development,* supra.

**La revocación de las donaciones[9]**

El Artículo 1305 del Código Civil de 2020, 31 LPRA sec. 10041, dispone que, por el contrato de donación, el donante se obliga a entregar y transmitir gratuitamente al donatario la titularidad de un bien. Las causas por las cuales una donación puede ser revocada se encuentran en el Artículo 1320 del mismo cuerpo legal, 31 LPRA sec. 10064, a saber:

---

[9] Como consignamos, al caso de autos le es aplicable las disposiciones del Código Civil de 2020. Como es sabido, mediante la aprobación de la Ley núm. 55-2020, se adoptó el Código Civil que entró en vigor el 28 de noviembre de 2020. Las donaciones fueron revocadas mediante escritura pública otorgada el 8 de febrero de 2021.

a. por el incumplimiento de las cargas impuestas al donatario;

b. por cualquiera de las **causas de indignidad** para suceder;

c. por cualquiera de las **causas de desheredación**;

d. cuando al donante sin descendencia le superviene un hijo;

e. cuando el donante no tiene descendencia y se hace constar en el texto de la donación la condición resolutoria de la supervivencia del descendiente que el donante reputa fallecido; o

f. por negarse el donatario a prestar alimentos al donante cuando este no ha podido obtenerlos por las personas obligadas por las relaciones de familia.

De otra parte, en cuanto a las **causas de indignidad** el Artículo 1556 del Código Civil de 2020, 31 LPRA sec. 10973, dispone que:

Es indigna para suceder:

(a) la persona que abandona o **maltrata física o sicológicamente al causante**;

(b) la persona convicta por haber atentado contra la vida del causante, de su cónyuge, de sus descendientes o de sus ascendientes, del ejecutor o de otro llamado a la herencia cuya muerte favorezca en la sucesión al indigno;

(c) la persona convicta por acusar o denunciar falsamente al causante de la comisión de un delito que conlleva una pena grave;

(d) la persona que deja de cumplir durante tres (3) meses consecutivos o seis (6) alternos con la obligación, impuesta administrativa o judicialmente, de alimentar al causante;

(e) la persona que, mediante dolo, intimidación, fraude o violencia induce o impide al causante otorgar, revocar o modificar su testamento; o el que, conociendo estos hechos, los utiliza para su beneficio; y,

(f) la persona que destruye, oculta o altera el testamento del causante.

El Código Civil de 1930 en su Artículo 685 inciso ocho (8), 31 LPRA sec. 2261, contenía como casual de indignidad "[e]l que hubiese maltratado físicamente a un ascendiente o causante." Por ende, el nuevo código incluyó el maltrato psicológico como causa de indignidad. En los comentarios al nuevo precepto se indicó que: "[e]l inciso (a) de este artículo sustituyó la prostitución y corrupción del causante "por lo más abarcadora del maltrato sicológico que incluye lo anterior." Garay Aubán, Miguel R. (compilador): *Código Civil 2020 y su Historial Legislativo*, Ediciones SITUM, 2da. Ed., 2021, Tomo 5, a la pág. 28. Al respecto, destacamos que el inciso (1) del Artículo 685 disponía como causal de indignidad: "Los padres que

abandonaren a sus hijos y prostituyeren a sus hijas o atentaren a su pudor."

Respecto a las **causas para desheredar** a los descendientes, el Artículo 1635, 31 LPRA sec. 11195, las enumera como sigue: (a) haber negado alimentos al testador sin motivo legítimo, (b) **haber maltratado, injuriado gravemente** o atentado contra la vida del testador, o (c) haber sido negligente en tomar a su cuidado al testador cuando se encontraba enfermo o sin poder valerse por sí mismo.

El Artículo 778 inciso (2) del Código Civil de 1930 también establecía como causa del progenitor para desheredar al hijo el "[h]aberle maltratado de obra o injuriado **gravemente** de palabra." Al respecto, el tratadista Vélez Torres comenta que "la injuria (sea ésta verbal o escrita), así como los malos tratos **han de ser graves**. Este requisito de gravedad se entiende por el hecho de que el acto de desheredación siempre debe considerarse como un ataque al instituto de las legítimas; siendo, pues, **excepcional** la desheredación, **sus causas han de ser graves** para que cumplan el requisito de 'justas'." [Énfasis nuestro]. José Ramón Vélez Torres, *Curso de Derecho Civil, Derecho de Sucesiones*, Tomo IV, Vol. III, 2 da. Ed., 1992, a la pág. 295. Además, en *Rodríguez Amadeo v. Santiago Torres*, 133 DPR 785 (1993) a las págs. 797-798, el alto foro consignó lo siguiente:

> El Artículo 778 del Código Civil, 31 [LPRA] sec. 2456, en lo pertinente dispone que será causa para desheredar a los hijos y descendientes el "haberle maltratado de obra o injuriado gravemente de palabra." Por otra parte, el Artículo 150 del Código Civil, 31 [LPRA] sec. 569, dispone que cesará la obligación de dar alimentos, entre otras cosas, cuando el alimentista, sea o no heredero forzoso, hubiere cometido alguna falta de las que dan lugar a la desheredación". Teniendo presente lo preceptuado por los Artículos 778 y 150 del Código Civil, debemos primeramente determinar **qué se considera una injuria grave** para efectos de este articulado.
> Los tratadistas están acorde en que para determinar qué es una injuria grave el tribunal debe aplicar un **criterio restrictivo** "... para evitar que cualquier

expresión lanzada en un momento de discusión o de apasionamiento pueda después servir de base para un resultado de desheredación". F. Puig Peña, *Tratado de Derecho Civil Español*, Madrid, Ed. Rev. Der. Privado, Vol. II, 1963, a la pág. 432. La dificultad para el juzgador estriba en determinar cuándo es grave la injuria o no. Para ello es necesario que haya mediado la intención o el *animus injuriandi* de esa causa; no basta la imprudencia temeraria. J. Vallet de Goytisolo, *Comentarios al Código Civil y Compilaciones Forales*, Madrid, Ed. Edersa, 1980, T. XI, pág. 571. Sobre la imprudencia temeraria debemos señalar que:

> ... excluye en gran parte la intención: o se constituye por un exceso de descuido o por una gran ignorancia de lo que se hace y debe hacerse. En ambos casos, falta la malicia, el propósito de hacer daño, quedando sólo un grado de intención indirecta, remota, que únicamente aprecia y determina la filosofía pura". Q. M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1944, T. XIV, pág. 1029.

> Además, el juzgador deberá considerar los siguientes factores a la hora de decidir si se incurrió en una conducta injuriosa de tipo grave que amerite la desheredación: el tono de la familia, la conducta filial en general y el contexto social al momento en el que se produce la ofensa. Albaladejo, *op. cit.* Esto último es bien importante porque si bien es cierto que por medio de la desheredación se persigue sancionar el incumplimiento de los deberes familiares y vindicar a las figuras de autoridad, como son los padres, por otra parte, hay que tener cuidado de no aplicar a determinado núcleo familiar unos criterios rígidos que ellos mismos nunca han fomentado. Sobre este punto nos comenta Alicia Elena Pérez Duarte y Noroña en *La obligación alimentaria: deber jurídico, deber moral*, México, Universidad Nacional Autónoma de México, 1989, pág. 144: [...][Énfasis nuestro]

En conclusión, y en lo aquí pertinente, para efectos de la revocación de donaciones se consideran como causales; el maltrato tanto físico como psicológico y la injuria grave.

**III.**

En esencia, la parte apelante señaló que erró el foro *a quo* al desestimar la demanda enmendada. En especial, estos aducen que las alegaciones son suficientes para establecer la causa de acción instada.

Como indicamos, para que proceda una solicitud de desestimación, al amparo de la Regla 10.2 de las de Procedimiento Civil, *supra*, hay que demostrar de forma certera que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho. Asimismo, los elementos de evaluación requieren considerar las

alegaciones de la manera más liberalmente posible a favor de la parte demandante; así como concederle a esta toda inferencia posible que pueda surgir de la demanda.

En virtud de dicho estándar de revisión, y a manera ilustrativa, surge de la *Demanda Enmendada* las siguientes alegaciones:

> 28. Luego de Don Jorge y Doña Hilda ceder parte de sus participaciones a Jorge hijo, Necco expandió y para ello don Jorge dio garantías personales para préstamos tomados por Necco para expandir. **Al tiempo**, **y al ver el estilo de vida de Jorge** hijo, se **preocupó por el estado financiero de la corporación** pues quería estar seguro de Necco pudiera cumplir sus obligaciones financieras y no verse don Jorge y doña Hilda, ya envejecientes, perjudicados por las garantías personales brindadas. Don Jorge en repetidas ocasiones inquirió con su **hijo sobre ciertos aspectos financieros de la corporación**, incluyendo los salarios que se adjudicó Jorge hijo, pero éste siempre se negó a brindar dicha información.
>
> 29. **Pensando que Jorge hijo sería más transparente** con sus hermanas, y dado que siempre fue la intención de don Jorge y doña Hilda en beneficiar a sus hijas también, don Jorge y doña Hilda donaron el restante de las acciones a sus dos hijas Mariel e Eunice. Mariel **levantó serias dudas sobre el manejo de los asuntos corporativos**, el cumplimiento con leyes fiscales, el pago y distribución de dividendos, la distribución de su capital, el acceso a los libros y récords financieros de Necco, entre otros. Sin embargo, **Jorge hijo se negó a ser transparente**. En su lugar, **utilizó las corporaciones como subterfugio y demandó a sus padres y a su hermana en vez de proveer la información que se les solicitaba**.
>
> 30. **Ante estas circunstancias** el demandado **Jorge hijo incurrió en una práctica de ataques injustificados hacia sus padres** y de la manera más vil e ingrata que un hijo puede actuar para con sus padres, quienes ya se encontraban en edad avanzada y aquejados por sus condiciones de salud, les demandó e injurió gravemente de obra y palabra. **En su lugar, utilizó las corporaciones como subterfugio y demandó a sus padres y a su hermana en vez de proveer la información que se les solicitaba**. Así, los demandados **le imputan a su madre apropiarse ilegalmente de una cantidad de dinero insignificante con relación al valor de las acciones corporativas** que ésta le había entregado por mera liberalidad como donación. Dicha actuación **constituye una grave ofensa e injuria** de palabra hacia una persona que siempre gozó de reputación y reconocimiento entre la comunidad y que cuando fue demandada no podía defenderse por encontrarse incapacitada.
>
> 31. En las reclamaciones incoadas, los demandados también transgreden la dignidad, honor, reputación y buen nombre de su padre Jorge Machado al acusarlo falsamente de una serie de hechos aberrantes como que amenazarlo con "matarlos a todos" mientras conducía un vehículo a alta velocidad. **Calumnió a su padre acusándolo de maltratante, física y emocionalmente, de su madre y de sus dos hijos mayores**.

32. **En las reclamaciones incoadas ante el tribunal**, el demandado Jorge hijo hace una relación de hechos falsos para justificar sus actuaciones, tales como alegados atentados hacia la vida y la integridad que hiciera Don Jorge hacia su amada esposa Doña Hilda. Dichas alegaciones que no cuentan con otra evidencia que la declaración viciosa del demandado Jorge hijo, en la que siquiera expresa la fecha en que se produjeron dichos hechos, se hicieron con el único ánimo de deshonrar el nombre de Don Jorge. Tal calumnia constituye una **grave injuria de palabra y de obra**, así como acto de maltrato sicológico.

33. La demandada **Eunice conociendo la falsedad de dichas acusaciones, injuria gravemente** a su padre al aseverar **bajo juramento en los pleitos incoados que las alegaciones de su hermano son ciertas**. La demandada no respeta los principios básicos familiares a pesar de que por los pasados 15 años ha abusado económicamente de sus padres viviendo en una propiedad que les pertenece, sin ni siquiera aportar para sus gastos básicos.

34. La demandada **Eunice mediante deposición** de 2 de junio de 2022 **falsamente acusó a su padre de abuso físico y emocional hacia su madre por años y de que atentó contra la vida de su hermano**. Dichas acusaciones que no son ciertas se hicieron a los únicos efectos de justificar que dos hijos que recibieron una donación millonaria de sus padres, ahora en la última de etapa de su vida, lo demanden por cobro de dinero.

35. **Por lo anterior**, ambos demandados **han incurrido en una conducta injuriosa de tipo grave** que amerita la desheredación según los criterios del caso de *Rodríguez Amadeo v. Santiago Torres*, 133 D.P.R. 785 (1993) que son: [...].

Así, y luego de realizar el análisis requerido, según explicamos, es forzoso concluir que las alegaciones no aducen la causa de acción invocada. Sin duda, el foro apelado no erró al concluir que "[l]as alegaciones de la demanda enmendada van dirigidas, en su mayoría, a cuestionar el manejo de la corporación por parte del demandado Jorge Machado Ruiz y los incidentes relacionados a cuestionamientos familiares por asuntos de negocio." En este sentido, de las propias alegaciones de la parte apelante surge que el supuesto maltrato e injuria fueron realizados en el marco de varias acciones judiciales y luego de ciertas desavenencias familiares en el manejo de las distintas corporaciones. Por ende, razonamos que tampoco erró el TPI al concluir que "el hecho de que las corporaciones hubiesen demandado a los aquí demandantes, por cobro de dinero, no implica un acto de maltrato o injuria grave que dé lugar a revocar las donaciones."

En la *Sentencia* apelada el TPI tomó conocimiento judicial de los casos SJ2018CV10602 y SJ2018CV10603, en los cuales las demandantes son Necco Inc., y Medical Express Rental Equipment, Inc., respectivamente. Sabido es que una corporación posee su propia personalidad jurídica separada y distinta a la de sus accionistas. Artículo 1.05 de la *Ley General de Corporaciones*, 14 LPRA 3505; *Sunc. Santaella v. Srio. de Hacienda*, 96 DPR 442, 451 (1968); *D.A.Co. v. Alturas Fl. Dev. Corp. y otros*, 132 DPR 905, 924 (1993). Por ende, las reclamaciones en ambos casos no fueron instadas por Jorge y Eunice en su carácter personal. Por lo que es menester puntualizar que la causa de acción aquí instada es de revocación de donaciones, no una demanda en daños y perjuicios por persecución maliciosa. En consecuencia, su analogía para efectos del presente análisis es improcedente según infiere la parte apelante en el recurso.

De otra parte, las expresiones realizadas por Jorge y Eunice fueron formuladas en el transcurso de un pleito judicial. Según surge del Apéndice del Recurso, la Declaración Jurada de Jorge fue realizada el 15 de enero de 2021, y si tomamos como ciertas las declaraciones allí contenidas, las mismas no satisfacen los criterios relativos a las causales de indignidad ni de desheredación. De igual manera, las expresiones de Eunice fueron realizadas durante una deposición como parte de un procedimiento judicial. En este sentido, aún cuando lo declarado fuera cierto, ello por sí tampoco cumple con algunas de las causales de indignidad ni de desheredación. Como consignamos en el derecho precedente, el análisis de las expresiones, para determinar si estas configuran una injuria grave, requieren un **criterio restrictivo y sus causas han de ser graves**. Sobre este particular, apuntalamos que parte de las expresiones de Jorge y Eunice reflejan lo que ellos consideran ocurrió durante **su propia niñez**, y otras van dirigidas a expresar asuntos sobre los

manejos de los entes corporativos, <u>lo cual entendemos no supera dicho criterio</u>. Incluso, si bien en *Rodríguez Amadeo v. Santiago Torres*, supra, a la pág. 797, nuestro alto foro analizó "si fue correcta la determinación del tribunal de instancia a los efectos de que el joven Neftalí incurrió en conducta injuriosa contra su padre, de tal forma que ésta da lugar a una causal de desheredación, lo que elimina a su vez el deber del padre alimentarle", el Código Civil vigente es claro al disponer como causas de indignidad y desheredación el maltrato físico y/o psicológico, y la **injuria grave**. Reiteramos, que declaraciones que versan sobre desavenencias, agravios, experiencias familiares y diferencias relativas a la administración de los negocios no cumplen con las causales para la revocación de una donación.

A lo previamente indicado, agregamos que concurrimos con lo expresado por el TPI en el dictamen apelado, respecto a que las expresiones formuladas en el transcurso de un pleito judicial no están revestidas de la intención de injuriar que el Tribunal Supremo ha determinado es imprescindible al evaluar la gravedad de la injuria.[10] Además, como indicara la parte apelada, las acciones instadas en los casos SJ2018CV10602 y SJ2018CV10603 en recobro de lo indebidamente pagado o cobrado, no equivale a una acusación de "apropiación ilegal o cualquier otro delito que apareje una pena capaz de constituir una causal suficiente para revocar unas donaciones."[11]

En resumen, considerando las alegaciones de la demanda lo más liberalmente posible a favor de la parte apelante, resulta forzoso

---

[10] En nuestro ordenamiento jurídico existen determinadas comunicaciones que están protegidas, dada su naturaleza. Una de estas instancias donde generalmente se reconoce inmunidad es durante los procedimientos judiciales. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 157 (2013). Esta inmunidad no se limita, exclusivamente, a las expresiones que vierta un juez, sino que incluye las expresiones de los testigos y abogados. Estas expresiones son protegidas pues gozan de alto interés público en la administración de la justicia y en el libre acceso a los tribunales. *Íd.*

[11] Véase la *Oposición a la Apelación*, a la pág. 16.

colegir que esta no tiene derecho a remedio alguno, bajo cualquier estado de derecho, que se pudiese probar en apoyo a su reclamación para <u>revocar las donaciones</u>. Por ende, los errores señalados no fueron cometidos por el foro primario.

**IV.**

Por los fundamentos antes expuestos, se confirma la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones