Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| ALPHA DEMOLITIONS, INC. Peticionaria | | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan |
|---|---|---|
| v. | KLCE202400333 | Caso Núm. SJ2023CV08167 |
| PILOTO CONSTRUCTION LLC, JORGE REDONDO, FULANA DE TAL y OTROS Recurridos | | Sobre: Incumplimiento de Contrato |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Adames Soto y la Juez Aldebol Mora

Adames Soto, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 22 de octubre de 2024.

Comparece Alpha Demolitions, Inc. (Alpha o apelante), mediante un recurso que tituló de *certiorari*[1], solicitando la revocación de la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, (TPI), el 25 de enero de 2024. Mediante dicho dictamen, el foro primario declaró *Con Lugar* la *Moción de desestimación* presentada por dos de los codemandados, el Sr. Jorge Redondo y su esposa, la Sra. Ángela Lightfoot, (los apelados). Al así actuar el TPI concluyó que de las alegaciones de la *Demanda* no surgía la responsabilidad personal de los apelados respecto a la corporación demandada, Piloto Construction LLC (Pilot), siendo esta una corporación con personalidad jurídica propia.

---

[1] A pesar del recurso ser identificado como de *certiorari*, realmente se nos solicita revocar una determinación del foro apelado que dispuso de manera final de la causa de acción dirigida contra una o más de las partes demandadas (los apelados), cumpliendo con los requisitos que exige la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V. *US Fire Ins. Co. v. Autoridad de Energía Eléctrica*, 151 DPR 962, 967 (2000).

Examinados los escritos de las partes, junto a la documentación incluida en sus apéndices, adelantamos que procede la confirmación de la *Sentencia Parcial.*

## I. Resumen del tracto procesal

El 10 de mayo de 2021 Piloto suscribió un contrato, AVP #2021-000120, con la Administración de Vivienda Pública (AVP), en el que se obligó a demoler cierta estructura y la construcción de otra. A su vez, para cumplir con dicho acuerdo Piloto subcontrató a Alpha, quien se encargaría de la demolición aludida.

No obstante, posteriormente Alpha instó una *Demanda* contra Piloto, alegando que esta incumplió el contrato suscrito entre las partes, al no pagarle varias sumas de dinero por concepto de órdenes de cambio, reclamaciones, facturas y retenciones. En esta acción entablada Alpha incluyó como partes demandadas a las siguientes: Piloto; Jorge Redondo, gerente general de Piloto, junto a su esposa Angela Lightfoot (apelados); José Rincón, presidente de Piloto, junto a su esposa y gerente del proyecto Teresita Redondo; la aseguradora MAPFRE y; la AVP.

Limitándonos a considerar el tracto procesal referente al asunto ante nuestra atención, en respuesta a la referida *Demanda*, el 19 de diciembre de 2023, los apelados señores Jorge Redondo y Angela Lightfoot instaron una *Moción de desestimación* a tenor con la Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2. Al fundamentar su solicitud, los apelados iniciaron por advertir que las alegaciones incluidas en la *Demanda* claramente exponían que se trataba de una controversia por presunto incumplimiento de contrato entre dos corporaciones con personalidades jurídicas propias, Piloto y Alpha. Sobre lo mismo, adujeron que las alegaciones dirigidas en su contra dejaban de exponer una reclamación que justificara la concesión de un remedio, pues referían a presuntas actuaciones de la corporación Piloto, que poseía personalidad

jurídica propia y distinta a la de sus accionistas y empleados, y fue esta la compañía contratada por Alpha para que llevara a cabo los trabajos que se reclamaron como incumplidos. Añadieron que las alegaciones esgrimidas contra el Sr. Jorge Redondo, fueron dirigidas contra sus actos **como empleado de Piloto**, en calidad de gerente general, lo que no creaba una causa de acción personal contra este, ni contra la sociedad de bienes gananciales que componía con la señora Ligthfoot. Es decir, adujeron que no había en las alegaciones indicio alguno que permitiera descorrer el velo corporativo e imponerle responsabilidad personal por actos imputados a Piloto.

En desacuerdo, Alpha ripostó mediante *Oposición a moción solicitando desestimación*. Señaló que el Sr. Jorge Redondo es el gerente general a cargo del proyecto de demolición contratado, lo que no le confería inmunidad sobre su propia culpa o negligencia. Alegó que los actos y omisiones del señor Redondo al inventar fraudulentamente, mediante comunicaciones verbales y escritas, pretextos para que no se pagara la cantidad adeudada, limitaron la continuación de las operaciones de Alpha y la concreción de otras negociaciones.

Pasado más de un año desde que los apelados instaran la referida *Moción de desestimación*, el 8 de enero de 2024, Alpha presentó una *Moción Solicitando Autorización para Enmendar la Demanda para Añadir Alegaciones para Establecer una Causa de Acción en Daños y Perjuicios*. En específico, solicitó añadir alegaciones sobre una alegada fianza otorgada por MAPFRE, la cual, a su vez, adujo que fue garantizada personalmente, entre otros, por los apelados.

Entonces, el 24 de enero de 2024, el TPI emitió varias *Resoluciones* concernientes a los demás codemandados, y la *Sentencia Parcial* cuya revocación nos solicita Alpha, desestimando la causa de acción presentada contra los apelados. Según adelantamos en el párrafo introductorio, el

tribunal *a quo* determinó que la causa de acción instada por Alpha contra los apelados no justificaba la concesión de un remedio, reconociendo así la personalidad jurídica separada e independiente de Piloto respecto a sus accionistas, corporación que fue la que contrató con Alpha, no apreciando en las alegaciones motivo para descorrer el velo corporativo. Además, en la misma fecha, el TPI notificó una *Orden* declarando *No Ha Lugar* la solicitud para enmendar la *Demanda* presentada por Alpha.

El 24 de enero de 2024, Alpha instó nuevamente la *Moción Solicitando Autorización para Enmendar la Demanda*, pero esta vez incluyó como anejo la *Demanda enmendada*.

Al próximo día, el 25 de enero de 2024, Alpha también presentó una *Solicitud de Reconsideración de la Sentencia Parcial*. Arguyó que, al desestimar la *Demanda* presentada contra los apelados, el TPI no había considerado su alegación de que el señor Redondo era quien supervisaba a los también codemandados señor Rincón y señora Teresita Redondo, y era quien tomaba todas las decisiones, incluyendo las de los pagos a realizar. Esgrimió que la enmienda propuesta establecía la responsabilidad del señor Redondo y la señora Lightfoot en su carácter personal, toda vez que fueron garantizadores de la fianza prestada por MAPFRE, la cual aseguraba que se completara el proyecto y el pago a las compañías subcontratadas.

El 20 de febrero de 2024 el Tribunal de Primera Instancia notificó una *Orden* permitiendo la enmienda a demanda solicitada por Alpha el 24 de enero de 2024, **excepto la que iba dirigida en contra de los apelados**. Este mismo día el foro apelado notificó una *Resolución* declarando *No Ha Lugar* la solicitud de *Reconsideración* de la *Sentencia Parcial* mediante la cual se desestimó la causa de acción contra los apelados.

Inconforme, el 9 de marzo de 2024, Alpha presentó el recurso ante nuestra consideración, alzando como único error lo siguiente:

Erró el tribunal de instancia al desestimar las alegaciones contra los demandados Redondo y Lightfoot ante la existencia de alegaciones particulares y específicas sobre sus actos y omisiones.

Superados varios asuntos en el proceso apelativo, que incluyó acoger la *Reconsideración* instada por Alpha respecto a una *Sentencia* desestimatoria nuestra, le concedimos término a los apelados para comparecer. En cumplimiento, estos presentaron *Oposición a petición de certiorari.*

Contando con los escritos de las partes, estamos en posición de resolver.

**II. Exposición de Derecho**

**A. Desestimación bajo la Regla 10.2 de Procedimiento Civil**

La moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, es aquella que formula el demandado para solicitar que se desestime la demanda presentada en su contra. *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008). Esta regla dispone que la parte demandada puede presentar una moción de desestimación en la que esgrima las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) **dejar de exponer una reclamación que justifique la concesión de un remedio**; y (6) dejar de acumular una parte indispensable. (Énfasis provisto). 32 LPRA Ap. V, R. 10.2; *Costas Elena v. Maguc Sport Culinary Corp.*, 2024 TSPR 13; *López García v López García,* 200 DPR 50, 69 (2018); *González Méndez v. Acción Social de Puerto Rico,* 196 DPR 213*,* 234*; Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 935 (2011).

Al evaluar una petición presentada al amparo de la Regla 10.2, *supra,* el foro primario tiene que tomar como ciertos todos los hechos bien

alegados en la demanda, y considerarlos de la manera más favorable a la parte demandante. *Bonnelly Sagrado v. United Surety & Indemity Company*, 207 DPR 715, 722 (2021); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013); *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013). Así, para que una moción de desestimación pueda prosperar, se tiene que demostrar de forma certera que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, 2022 TSPR 104; *López García v. López García*, supra, pág. 70*; Rivera Sanfeliz v. Jta. Dir. FirstBanck*, 193 DPR 38, 49 (2015). El tribunal deberá tener en cuenta que, conforme lo dispone la Regla 6.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 6.1, la demanda solo tiene que contener una relación sucinta y sencilla de la reclamación demostrativas de que el peticionario tiene derecho a un remedio. *Torres, Torres v. Torres et al.* 179 DPR 481, 502 (2010).

Ahora bien, ello solo aplicará a aquellos hechos alegados de forma clara y concluyente, que de su faz no den margen a dudas. *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, supra*; Rivera Sanfeliz v. Jta. Dir. FirstBanck*, supra. A tenor, no se presumen ciertos hechos que no estén bien alegados, ni las alegaciones o conclusiones de derecho. *Molina v. Supermercado Amigo, Inc.*, 119 DPR 330, 338 (1987). El TPI debe determinar si, a base de los hechos que aceptó como ciertos, *la demanda establece una reclamación plausible que justifique la concesión de un remedio. Costas Elena v. Nagic Sport Culinary Corp.,* supra, citando a R. Hernández Colón, *Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 307. Las conclusiones de derecho o las deducciones injustificadas de los hechos no se tienen nunca por admitidas. J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* Publicaciones JTS, 2011, T. II,

pág. 533. De esta manera una demanda puede ser desestimada si claramente carece de méritos, y esto puede consistir en la no existencia de una ley que sostenga una reclamación, en la ausencia de hechos suficientes para que la reclamación sea válida, o en la alegación de algún hecho que necesariamente destruya la reclamación. *Reyes v. Sucn. Sánchez Soto*, 98 DPR 302, 308 (1970). En este sentido, si bien basta que la relación de hechos sea *sucinta y sencilla*, las alegaciones deben recoger hechos demostrativos que permitan inferir que la parte peticionaria tiene derecho a un remedio. Por tal razón, se requiere "que en las alegaciones se aporte una relación de hechos, con el propósito de que las partes y el tribunal puedan apreciar con mayor certeza los eventos medulares de la controversia".[2]

### B. Personalidad jurídica de las corporaciones y la doctrina de descorrer el velo corporativo

a.

La Ley Núm. 64-2009, según enmendada, conocida como la "Ley General de Corporaciones", 14 LPRA secs. 3501 *et seq.*, dispone todo lo concerniente a la formación, regulación y extinción de figuras legales para la "realización o promoción de cualquier negocio o propósito lícito [...]" Artículo 1.01. B 14 LPRA sec. 3501.

Entre estas alternativas para hacer negocios en Puerto Rico se encuentran las Compañías de Responsabilidad Limitada, en adelante CRL, (conocidas generalmente como LLC, por su acrónimo en inglés), que el mencionado estatuto define como: "...compañía de responsabilidad limitada creada por una (1) o más personas bajo las leyes de Puerto Rico, incluyendo sin limitaciones a una compañía de Responsabilidad Limitada con Fin Social o "CRLFS" que satisfaga todos los requisitos según

---

[2] Véase Informe de las Reglas de Procedimiento Civil, Comité Asesor Permanente de las Reglas de Procedimiento Civil, Secretariado de la Conferencia Judicial y Notarial, 2008, pág. 70.

expuestos en el sub-inciso (c) del Artículo 19.06 de esta ley." Artículo 19.01(e)14 LPRA sec. 3951.

Cónsono con lo anterior, "dichas entidades representan una opción híbrida o intermedia entre la corporación y la sociedad civil ya que comparte características de ambas. Por ejemplo, **gozan de responsabilidad limitada al igual que una corporación** y sus intereses son transferibles, aunque con ciertas particularidades, y pueden ostentar de una dirección centralizada de así desearlo." (Énfasis provisto). Muñoz Rivera, *Ley de Corporaciones de Puerto Rico Análisis y Comentarios*, Primera Edición, San Juan, Ediciones SITUM, 2015, pág. 373.

En vista de ello, el principio de responsabilidad limitada produce la existencia de una corporación como ente jurídico independiente de sus accionistas, directores y oficiales. *Peguero y otros v. Hernández Pellot*, 139 DPR 487, 502 (1995); *D.A.Co. v. Alturas Fl. Dev. Corp. y otro*, 132 DPR 905, 924 (1993). Por esta razón, **una de las características principales de la corporación es que cuenta con una personalidad jurídica distinta y separada a la de sus dueños**. (Énfasis provisto). *Multinational Ins. v. Benítez y otros*, 193 DPR 67, 76 (2015); *Santiago et al. v. Rodríguez et al.*, 181 DPR 204, 214 (2011). De no reconocerse la personalidad jurídica distinta y separada de la corporación con relación a la de los accionistas, "se destruiría el principio de responsabilidad limitada que es consustancial con la ficción corporativa". *Fleming v. Toa Alta Develop. Corp.*, 96 DPR 240, 244 (1968).

Cónsono con lo anterior, el Artículo 217 del Código Civil de Puerto Rico, 31 LPRA secs. 5311 *et. seq.,* dispone que es persona jurídica:

> (a) el organismo y la entidad de interés y financiamiento público cuya ley orgánica le reconoce personalidad jurídica;
>
> (b) la corporación, compañía, sociedad, sociedad especial, fundación y otras asociaciones de personas con manifiesto interés particular, sean civiles, mercantiles o industriales, tengan o no fines de lucro, **a las que la ley concede personalidad jurídica independiente de la de sus constituyentes**. 31 LPRA sec.5862 (Énfasis provisto).

Por su parte, y específicamente en cuanto a la responsabilidad ante terceras personas de las CRL, la Ley Núm.64-2009, *supra,* dispone:

A. Excepto que otra cosa se disponga en esta Ley, las deudas, obligaciones y responsabilidades de una CRL, que surjan de contrato, daños o de otra forma, serán deudas, obligaciones y responsabilidades **exclusivas de la CRL, y ningún miembro o administrador de la CRL estará obligado personalmente por dichas deudas, obligaciones y responsabilidades de la CRL, por el mero hecho de ser un miembro o actuar como administrador de la CRL.**

B. No obstante lo dispuesto en el inciso (a) de este Artículo, bajo un CCRL[3] u otro contrato, un miembro o administrador podrá acordar obligarse personalmente por cualquier o todas las deudas, obligaciones y responsabilidades de la CRL. Artículo 19.19, 14 LPRA sec. 3969. (Énfasis provisto).

En este sentido, "[u]no de los atributos básicos de la CRL es una personalidad jurídica separada y como corolario la responsabilidad limitada en la misma entidad. Por ende, **como regla general las deudas, obligaciones y responasabilidades de la CRL serán exclusivas de la CRL y ningún miembro o administrador estará obligado personalmente por tales deudas a menos que se pacte lo contrario**. […]. *Muñoz Rivera, op cit., pág. 396-397.* (Énfasis provisto).

Añade Muñoz Rivera que:

En el caso de las CRL, como regla general la entidad es la que responde por las deudas y obligaciones de la entidad, y no los miembros. Pero similar a como sucede con las corporaciones, de incumplirse ciertas formalidades y no respetarse la separación entre los intereses comerciales de la CRL y los personales de los Miembros, éstos podrán enfrentarlo si con ello se evita una injusticia. Sin embargo, vale recordar que la organización de las CRL es más flexible ya que se le exigen menos formalidades que a las corporaciones. Para poder organizar y administrar una CRL, solo requiere que radique un Certificado de Organización y se otorgue un Contrato de Administración entre la CRL y los Miembros para regular los asuntos internos de la CRL. Por tanto, descorrer el velo de una CRL puede ser más difícil que una corporación. Esto

---

[3] El Artículo 19.01(g) de la Ley 64-2009 dispone que el Contrato de Compañía de responsabilidad limitada o "CCRL" como aquel contrato escrito (sea llamado contrato de compañía de responsabilidad limitada, contrato operacional, o de cualquier otra forma), adoptado por los miembros de una compañía de responsabilidad limitada para regir los asuntos internos y administración de la compañía de responsabilidad limitada. Un contrato de compañía de responsabilidad limitada será válido aun cuando la compañía de responsabilidad limitada tenga un solo miembro. Un contrato de compañía de responsabilidad limitada podrá proveer derechos a cualquier persona, incluyendo una persona que no sea parte del contrato de compañía de responsabilidad limitada, según dispuesto en dicho contrato.[...]. 14 L.P.R.A. sec. 3951. Por su parte, Muñoz Rivera expresa que en términos sencillos este contrato equivale al contrato de administración de una sociedad y a los estatutos corporativos y acuerdo entre accionistas de una corporación. Muñoz Rivera, *op cit.*, pág. 377.

representa otra ventaja de la CRL frente a la corporación. [...].
*Muñoz Rivera, op cit., pág. 398*

Por lo tanto, una vez se cumple con los requisitos en Ley una CRL adquiere personalidad jurídica separada de sus miembros y solamente se le podrá imponer responsabilidad a estos si se descorre el velo corporativo. Inclusive, "[e]l mero hecho que una persona sea el único accionista o miembro no autoriza la imposición de responsabilidad individual. Para ello, hace falta una identidad de intereses entre los corporativos e individuales (*alter ego*) así como una injusticia". *Muñoz Rivera, op cit.,* pág. 397.

b.

La posibilidad de rasgar o descorrer el velo corporativo para imponer responsabilidad personal a los accionistas es la excepción. La regla general es que los accionistas tienen una responsabilidad limitada por las deudas y obligaciones de la corporación. *Daco v. Alturas Fl. Dev. Corp y otros,* supra. Como ya hemos señalado, la corporación tiene su propia personalidad jurídica y patrimonio, distintos a los de sus accionistas. *Sucn. Santaella v. Srio. de Hacienda,* 96 DPR 442, 451 (1968). Así no procede invocar la doctrina de descorrer el velo corporativo para derrotar la esencia misma del concepto corporativo.

Cuando se pretende "descorrer el velo corporativo" se requiere evidencia suficiente que justifique la imposición de responsabilidad, más allá del ente corporativo, a los directores, oficiales o accionistas de la corporación. *Díaz Aponte v. Comunidad San Jose, Inc.,*130 DPR 782, 798 (1992); *San Miguel Fértil. Corp. v. P.R. Drydock*, 94 DPR 424, 430 (1967).

Por ser la Ley General de Corporaciones una ley especial, no procede invocar la doctrina de descorrer el velo corporativo, sin más, para derrotar la esencia misma del concepto corporativo. La petición requiere prueba fuerte y robusta que justifique la excepción y sugiera que la corporación es un 'alter ego' o que hay entre la persona natural y la jurídica tal

identidad de intereses y propiedad que ambas personas, se hallan enredadas de tal manera, que el sostener la ficción de dos entidades distintas equivale a proteger un fraude, una injusticia en la evasión del cumplimiento de una obligación estatutaria, permitir que se derrote una política pública, justificar la inequidad o defender el crimen. *Díaz Aponte v. Comunidad San José Inc.,* 130 DPR 782, 798 (1992); *San Miguel Fértil. Corp. v. P.R. Drydock*, supra, pág. 430.

El profesor Carlos E. Díaz Olivo discute cuáles son los principios rectores en la aplicación de la doctrina de descorrer el velo corporativo. Estos principios son los siguientes:

1. La aplicación de la doctrina depende de los hechos específicos de cada caso;

2. El ignorar la entidad corporativa constituye la excepción a la regla;

3. La corporación posee una personalidad jurídica separada y distinta de sus accionistas y la regla general es al efecto de que la existencia de la corporación, independientemente de sus accionistas no puede ser ignorada o descartada;

4. El fracaso de la corporación en su gestión económica, su administración deficiente y la falla en observar las formalidades corporativas no son por sí mismos, razón suficiente para desconocer la entidad;

5. El mero hecho de que una persona sea el único accionista de una corporación no conlleva de por sí la imposición de responsabilidad individual;

6. El peso de la prueba recae sobre la parte que busca descorrer el velo y propone la imposición de responsabilidad individual a los accionistas;

7. El peso de la prueba no se descarga con la mera alegación de que la empresa es un *alter ego* de los accionistas;

8. La prueba del que solicita el desconocimiento debe ser prueba fuerte y robusta;

9. Corresponde a la parte que propone el levantamiento del velo presentar prueba que demuestre que:

    (i) existe tal identidad de interés y propiedad que la corporación y la persona de sus accionistas se hallen confundidas; y

> (ii) que los hechos sean de tal naturaleza que el sostener la ficción de la corporación derrota la política pública por equivaler a sancionar la utilización de la corporación para perpetuar un fraude o promover una injusticia o ilegalidad.

C. Díaz Olivo, *Corporaciones, Tratado de Derecho Corporativo,* 2da ed., Puerto Rico, (2018), pág. 120.

### III. Aplicación del Derecho a los hechos

La controversia que nos ha tocado dilucidar puede reducirse a lo siguiente, si tomadas como ciertas las alegaciones contenidas en la *Demanda* instada por Alpha contra los apelados, existen elementos que justifiquen la excepción de descorrer el velo corporativo. Es decir, si examinadas las alegaciones estas sugieren que Piloto es un *alter ego* de los apelados, y proteger la personalidad jurídica de esta última conllevaría un fraude, una injusticia en la evasión del cumplimiento de una obligación estatutaria, permitir que se derrote una política pública, justificar la inequidad o defender el crimen. *Díaz Aponte v. Comunidad San José Inc.,* supra.

Determinamos que, aun partiendo de la veracidad de las alegaciones contenidas en la *Demanda*, y habiéndolas considerado de la manera más favorable, estas dejan de exponer una reclamación que justifique la acción personal dirigida contra los apelados, con las que se pretendió preterir la personalidad jurídica distinta e independiente de Piloto.

De las propias alegaciones surge, sin mayor esfuerzo interpretativo, que la contratación en este caso ocurrió entre las empresas Alpha y Piloto, es decir, entre entidades comerciales que tienen personalidad jurídica independiente de sus directores, oficiales o accionistas. *Ergo*, por causa de la personalidad jurídica que nuestro ordenamiento les reconoce a tales empresas, la regla general es que la responsabilidad del presunto incumplimiento de contrato en este caso por parte de la segunda, correspondería asumirlo a la corporación, no a sus directores, oficiales o accionistas.

Entonces, para que operara la excepción a la regla general aludida, correspondía que, como mínimo, Alpha alegara que Piloto funcionaba como un *alter ego* de los apelados, existiendo tal identidad de interés y propiedad entre la corporación y estos, que se encontraba confundida; y que los hechos son de tal naturaleza que al sostener la ficción de la corporación se derrotaría la política pública por equivaler a perpetuar un fraude o a promover la injusticia o ilegalidad. Sin embargo, la *Demanda* ante nuestra consideración carece de alegaciones en tal dirección. La única alusión cercana a los elementos que se consideran al pretender desvelar el velo corporativo fue la alegación general y conclusiva de que los demandados representaron *fraudulentamente* que Alpha había abandonado el proyecto, como también que hubiesen tenido que incurrir en gastos para terminar el trabajo al que Alpha se obligó, o que no recibirá pago de Piloto hasta que AVP le pague a este último por los trabajos realizados por Alpha, contrario a lo dispuesto en el contrato.[4] Sin embargo, la lectura completa de las alegaciones deja patentemente claro que las alegaciones aludidas más bien describen el presunto incumplimiento del contrato, sin que refieran propiamente a un *fraude*.

En definitiva, las alegaciones contenidas en la *Demanda* dirigidas contra el Sr. Jorge Redondo aludieron a sus funciones en Piloto como gerente general de dicha empresa, insuficientes para apuntar o dirigir la atención del TPI sobre acciones realizadas por este que sirvieran para justificar descorrer el velo corporativo y hacerle personalmente responsable por el presunto incumplimiento de contrato de la corporación para la cual labora. La alegación de Alpha imputándole *fraude* al Sr. Jorge Redondo la apreciamos como conclusoria, carente de bases fácticas para sostenerla. Las alegaciones no lograron recoger hechos demostrativos que

---

[4] Alegaciones 22-23 de la *Demanda*, Apéndice del recurso de *certiorari*, págs. 5 y 6.

permitieran inferir que Alpha tuviera derecho a un remedio contra la persona de los apelados.

Por último, aunque en el recurso presentado Alpha nos convida a que consideremos las alegaciones contra los apelados que incluyó en su petición de *Demanda Enmendada*, desistimos de aceptar tal invitación. El dictamen apelado es de la *Sentencia Parcial* emitida el 24 de enero de 2024, fecha para la cual el TPI **no** había considerado enmienda alguna a la *Demanda* presentada por Alpha contra los apelados, por lo que tuvimos que circunscribirnos a las alegaciones originales. De haber estado inconforme Alpha con la *Resolución* del TPI donde fue denegada su solicitud de enmienda a *Demanda* respecto a los apelados, debió haber instado el recurso apelativo correspondiente contra dicho dictamen, pero no es el asunto ante nuestra atención.

**IV. Parte dispositiva**

Por los fundamentos que anteceden, se *confirma* la *Sentencia Parcial* apelada.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones